868 P.2d 457

**Heinz W. KUHNERT and Sherilyn Marie Kuhnert, Plaintiffs–Appellants,**

**v.**

**Clyde W. ALLISON and Darlene M. Osterman, Defendants–Appellees, and Libbie & Company, Inc., a Hawai'i corporation, Marion Libbie Kamisugi, Herbert David Osterman, John Doe 1–5, Doe Corporation 1–5, Doe Partnership 1–5, and Doe Governmental Entity 1–5, Defendants, and State of Hawai'i, Real Estate Commission, Respondent–Appellee.**

**No. 16607.**

Supreme Court of Hawai'i.

Feb. 25, 1994.

---

Ronald G.S. Au, Honolulu (Connie G.W. Meredith and Gerald H. Kurashima, with him on the briefs), for plaintiffs-appellants.

Sidney K. Ayabe, Honolulu (Rodney S. Nishida, with him on the briefs; of Libkuman, Ventura, Ayabe, Chong & Nishimoto), for defendants-appellees.

Before LEVINSON, Acting C.J., and NAKAYAMA and RAMIL, JJ., Circuit Court Judge MILKS, in place of MOON, C.J., recused, and Circuit Court Judge BLONDIN, in place of KLEIN, J., recused.

RAMIL, Justice.

Plaintiffs–Appellants Heinz and Sherilyn Kuhnert (Kuhnerts) were awarded compensatory and punitive damages in a real estate fraud case. The Kuhnerts are now attempting to collect their punitive damages from the Real Estate Recovery Fund (RERF). Respondent–Appellee State of Hawai'i, Real Estate Commission (Commission) contends that the RERF does not provide for the recovery of punitive damages. In the alternative, the Commission argues that the Kuhnerts failed to comply with the statutory requirements that would entitle them to recover. The circuit court denied the Kuhnerts' request to recover punitive damages from the RERF. We affirm.

I. *Facts*

In 1983, the Kuhnerts listed their Nu'uanu home for sale with Libbie & Company, a real estate firm, whose principal and broker was Marion Kamisugi (Kamisugi). The listing agent of the Kuhnerts' home was Clyde Allison (Allison). Allison was also the vice-president of Libbie & Company.

Eventually, the Kuhnerts entered into a Deposit Receipt Offer & Acceptance (DROA) and a sale with Darlene and Herbert Osterman (Ostermans), pursuant to which the Kuhnerts received cash and the Ostermans' condominium. When the condominium's inflated value was discovered, the Kuhnerts filed suit.

On July 31, 1987, the Kuhnerts filed a complaint based upon fraud against the Ostermans, Allison, Kamisugi and Libbie & Company (collectively Defendants). The Kuhnerts alleged that Mrs. Osterman was a licensed real estate agent and that the Ostermans, Allison, Kamisugi and Libbie & Company knew that the value of the condominium was inflated and that the transaction constituted an intentional fraud. The Kuhnerts sought compensatory and punitive damages.

Pursuant to Hawai'i Revised Statutes (HRS) § 467–18(a) (1985),[1] the Kuhnerts notified the Commission on July 31, 1987 that they had commenced a civil action that could result in collection from the RERF. Thereafter, on August 10, 1987, Gary Young (Young), the RERF's counsel, wrote to the Kuhnerts' attorney and asked that copies of all pleadings be served on him.

The circuit court dismissed the Kuhnerts' complaint on October 7, 1988, on the grounds that the Kuhnerts had not timely served Defendants with the complaint. This order was not served on Young and was not obtained by the Commission until September 2, 1992.

The Kuhnerts filed a second complaint against Defendants on October 13, 1988.

---

1. HRS § 467–18(a) (1985) provides:
 No action for a judgment which subsequently results in an order for collection from the [RERF] shall be started later than two years from the accrual of the cause of action thereon. When any aggrieved person commences action for a judgment which may result in collection from the [RERF], the aggrieved person shall notify the [Commission] in writing to this effect at the time of the commencement of such action. The commission may intervene in and defend any such action.

The Commission was not notified of the second complaint.

After trial in May 1990, the jury returned a verdict in favor of the Kuhnerts and against all Defendants, awarding the Kuhnerts both compensatory and punitive damages. On a motion for new trial, the circuit court remitted portions of both the compensatory and punitive damages and granted a new trial in the event that the Kuhnerts did not accept the remittitur. The Kuhnerts accepted the remittitur, but Defendants filed a notice of appeal. This court affirmed the judgment of the circuit court.

Since this court's affirmation of the circuit court judgment, the Kuhnerts have been unable to collect the punitive damages awarded against Allison and Mrs. Osterman—$200,000 and $125,000, respectively. On August 28, 1992, the Kuhnerts filed a motion for an order directing payment from the RERF for the punitive damages assessed against Allison and Mrs. Osterman. The Commission opposed the motion, which the circuit court denied on October 21, 1992. The Kuhnerts filed this appeal on November 9, 1992, contending that the denial of their motion was in error.

## II. *Discussion*

### A.

Before we address the merits of this appeal, we first address the Commission's contention that the Kuhnerts are barred from collecting from the RERF because they did not inform the Commission of the commencement of the second lawsuit.[2] Specifically, the Commission alleges two errors in violation of HRS § 467–18:[3] (1) the second complaint was filed more than two years after the accrual of the cause of action; and (2) the Commission was not served with notice of the second complaint.[4]

2. HRS § 467–23 (1985) provides:
 **Waiver of rights.** The failure of an aggrieved person to comply with this chapter relating to the [RERF] shall constitute a waiver of any rights hereunder.

3. *See supra* note 1.

4. The Kuhnerts incorrectly counter that this issue should have been raised in a cross-appeal as

### 1.

HRS § 467–18 prescribes that an action resulting in an order for collection from the RERF must be filed within two years from the accrual of the cause of action.

HRS § 467–18 is clear and unambiguous. *Myers v. Beatty,* 70 Haw. 536, 538, 777 P.2d 709, 710 (1989) (appellants waived the right to recover from the RERF, where notice of the commencement of an action was given eight months after the action had been commenced). "There is nothing in the legislative history to indicate that the legislature did not mean what it said when it required the Commission to be notified in writing of the commencement of the action at the time the action was commenced, nor is there anything to indicate that the legislature did not mean that a failure to comply with that requirement would constitute a waiver under HRS § 467–23." *Id.* at 538, 777 P.2d at 710. Thus, the remaining question is the date the Kuhnerts' cause of action accrued.

HRS § 467–16 (Supp.1992) is a remedial statute and must be construed liberally in order to accomplish the purpose for which it was intended. *Flores v. United Air Lines, Inc.,* 70 Haw. 1, 12, 757 P.2d 641, 647 (1988) (remedial statutes are those which provide a remedy or improve or facilitate remedies already in existence for the enforcement of rights and the redress of injuries).

Here, the Kuhnerts' cause of action accrued at the time of sale of the condominium. The sale of the condominium established the damages sustained by the Kuhnerts as a result of the fraud. Thus, the Kuhnerts' cause of action did not accrue until 1987, when they sold the condominium, and, therefore, the second complaint filed in October 1988 was timely.

a clearly erroneous finding of fact (FOF). This argument is without merit. The Commission may argue, in its answering brief, theories that support the underlying judgment. Thus, because the issue of untimely notice supports the denial of recovery, the Commission was not required to file a cross-appeal to raise this issue.

### 2.

██ The Commission also argues that the Kuhnerts failed to notify it of the dismissal of the first complaint and of the filing of the second complaint. The Commission has not alleged that it was prejudiced in any way by these failures. It does, however, argue that HRS Chapter 467 should be strictly construed.

Clearly, the Commission was properly notified of the first complaint. Thus, the issue in the present case is whether the Kuhnerts were required under HRS § 467-18 to notify the Commission of the second complaint.

██ The purpose of HRS § 467-18 was to provide the Commission with notice of a complaint such that default judgments would be avoided. According to the legislative history, the Commission must be served with the pleadings "to protect against the problem of party defendants defaulting and causing a resulting recovery from the Fund without a court hearing." Hse.Stand.Comm.Rep. No. 393-72, in 1972 House Journal, at 813.

Here, the Commission was properly served with notice of the first complaint and suffered no prejudice when the Kuhnerts failed to notify it of the second complaint. The outcome of the Kuhnerts' second complaint would not have differed had the Commission been notified of the second complaint. The Commission was well aware that the Kuhnerts had a cause of action pending against Defendants which could result in a collection from the RERF, and, as noted, was not apprised that the first complaint had been dismissed until September 2, 1992. Accordingly, from the Commission's perspective, the second complaint was the functional equivalent of the first.

As for the Defendants, they provided a vigorous defense against the Kuhnerts' claims. Because the purpose of HRS § 467-18 was to provide notice to the Commission such that default judgments could be avoided, the Commission suffered no prejudice by virtue of the Kuhnerts' failure to serve it with the second complaint. Accordingly, any technical non-compliance by the Kuhnerts with the statutory requirements of HRS § 467-18(a) constituted harmless error.

### B.

██ Given the Kuhnerts' timely filing, we now address the Kuhnerts' contention that they are entitled to a partial satisfaction of their punitive damage award against Allison and Mrs. Osterman from the RERF. The purpose of the RERF is set forth in HRS § 467-16, which provides:

**Real estate recovery fund; use of fund; fees.** The real estate commission shall establish and maintain a real estate recovery fund from which any person aggrieved by an act, representation, transaction, or conduct of a duly licensed real estate broker, or real estate salesperson, upon the grounds of fraud, misrepresentation, or deceit, may recover upon the commission's settlement of a claim or by order of the circuit court or district court of the county where the violation occurred, an amount of not more than $25,000 per transaction for *damages sustained* by the fraud, misrepresentation, or deceit, including court costs and fees as set by law, and reasonable attorney fees as determined by the court.

When any person makes application for an original license to practice as a real estate broker or salesperson the person shall pay, in addition to the person's original license fee, a recovery fund fee as provided in rules adopted by the director of commerce and consumer affairs pursuant to chapter 91 for deposit in the real estate recovery fund. If the commission does not issue the license, this fee shall be returned to the applicant.

(Emphasis added). The Kuhnerts contend that the phrase "damages sustained," as used in HRS § 467-16, includes punitive damages. This contention is erroneous.

██ The interpretation of a statute is a question of law which this court reviews *de novo. Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). This court's foremost obligation in construing a statute " 'is to ascertain and give effect to the intention of the legislature[,]' " obtained primarily from the language contained in the statute itself. *Id.* (citations omitted). Further, the statutory language must be read in the context of the

entire statute and construed in a manner consistent with its purpose. *Id.* (citation omitted). Where the statutory language is plain and unambiguous, this court's only duty is to give effect to its plain and obvious meaning. *AIG Haw. Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 634, 851 P.2d 321, 328 (1993) (citation omitted).

■ The stated purpose of HRS § 467–16 "is to furnish financial protection to the consumer public when dealing with real estate brokers and sales[persons] by providing a fund which, under certain circumstances, will satisfy unpaid judgments against real estate brokers and sales[persons]." Hse. Stand.Comm.Rep. No. 532, in 1967 House Journal, at 673; Sen.Stand.Comm.Rep. No. 647, in 1967 Senate Journal, at 1146. The funds necessary to carry out this purpose are provided by brokers and salespersons without undue burden to them. *Id.*

■ Black's Law Dictionary defines "compensatory damages" as that which "will compensate the injured party for the injury sustained, and nothing more[.]" BLACK'S LAW DICTIONARY 390 (6th ed. 1990). Punitive damages, on the other hand:

> 'are in no way compensatory and are not available as a matter of right. An award of punitive damages is purely incidental to the cause of action. They may be awarded by the grace and gratuity of the law. They also act as a means of punishment to the wrongdoer and as an example and deterrent to others.'

*Masaki v. General Motors Corp.,* 71 Haw. 1, 12, 780 P.2d 566, 573, *recon. denied,* 71 Haw. 664, 833 P.2d 899 (1989) (quoting *Kang v. Harrington,* 59 Haw. 652, 660, 587 P.2d 285, 291 (1978)). Moreover, " 'the award of punitive or exemplary damages constitutes an exception to the purely compensatory aspect of the damages concept as a means to right a wrong,' and that 'the deterrent or retributive effect of punitive damages must be placed squarely on the shoulders of the wrongdoer.' " *Id.* 71 Haw. at 12, 780 P.2d at 573 (quoting *Lauer v. Young Men's Christian Ass'n. of Honolulu,* 57 Haw. 390, 402, 557 P.2d 1334, 1342 (1976)). Thus, by definition, the Kuhnerts did not "sustain" punitive damages.

The punitive damages in this case were intended as a retribution and should be placed squarely on the shoulders of the wrongdoers—Allison and Mrs. Osterman. It is, therefore, contrary to the purpose of punitive damages to allow the Kuhnerts to recover their award of punitive damages from the RERF.

Moreover, legislative history suggests that the legislature did not intend the phrase "damages sustained" to include punitive damages. Although the legislative history of HRS § 467–18 does not define the phrase "damages sustained," we may refer to statutes with similar language, which deal with similar subject matters, for guidance. *See Lussier v. Mau–Van Development, Inc.,* 4 Haw.App. 421, 424, 667 P.2d 830, 832–33 (1983) (citations omitted). We therefore look to the legislative history of the Contractors Recovery Fund (CRF).

The CRF was enacted in 1973, six years after the enactment of the RERF. The CRF is described in HRS § 444–26 (Supp.1992), which provides in part:

> The contractors license board is authorized and directed to establish and maintain a [CRF] from which any person injured by an act, representation, transaction, or conduct of a duly licensed contractor, which is in violation of the provisions of this chapter ... may recover by order of the circuit court or district court ... for damages sustained by the act, representation, transaction, or conduct. Recovery from the fund shall be limited to the actual damages suffered by the claimant[.]

At the time the CRF was enacted, the legislature intended to follow the RERF and limit recovery to actual damages. The House and Senate Committee Reports stated:

> The provisions of this bill are patterned after the [RERF] which presently indemnif[ies] victims of real estate brokers and [salespersons]. Like the [RERF], the [CRF] is financed by licensees and a single recovery is allowed, which is limited to actual damages suffered[.]

Hse.Stand.Comm.Rep. 170, 1973 House Journal at 830; Sen.Stand.Comm.Rep. 733, 1973 Senate Journal at 936.

In 1976, the legislature amended the CRF and stated:

> [u]nder [the 1973 CRF statute] any person aggrieved by an act, representation, transaction or conduct of a duly licensed contractor may recover by court order from the [CRF] an amount not more than $10,-000 for damages sustained as a result of such act, representation, transaction or conduct.

Sen.Stand.Comm.Rep. No. 748–76, in 1976 Senate Journal at 1210. Clearly, the legislature used the phrases "damages sustained" and "actual damages" interchangeably, and intended both to have the same meaning. Thus, because the legislature used the phrase "damages sustained" in the RERF and intended the phrase to mean "actual damages," it did not intend to provide for the recovery of punitive damages from the RERF.

 The Kuhnerts also contend that "[r]eal estate licensees should not be allowed to commit fraudulent acts with impunity because a punitive damage award might be uncollectible and leave the innocent victim without recourse from neither [sic] the licensee or the [RERF]." This, however, is contrary to the stated purpose of the RERF. The RERF was intended to provide financial protection for damages *sustained* by an ag-grieved person. It was not intended to provide financial protection for damages that serve as retribution or as a deterrent against brokers and salespersons.

Finally, the Kuhnerts argue that recovery of punitive damages from the RERF would not be an undue burden because the amount recoverable is limited to a specified amount. This argument is without merit. Requiring brokers and salespersons to supply the funds for the RERF to cover punitive damages is an undue burden, inasmuch as innocent contributors would be required to pay for damages which were awarded to punish a wrong-doer. Not only is this contrary to the purpose of the RERF, but it is also contrary to the purpose of punitive damages.

### III. *Conclusion*

Accordingly, we affirm the circuit court's denial of the Kuhnerts' motion to collect from the RERF and hold that the RERF was not intended to reimburse persons aggrieved in a fraudulent real estate transaction for their uncollected punitive damages. Consequently, we find it unnecessary to address the Kuhnerts' remaining points of error.[5]

---

**5.** The Kuhnerts' remaining issues on appeal pertain to the amount recoverable from the fund.