908 P.2d 1204

**STATE of Hawai'i for the Use and Benefit of AMERON, INC., dba Ameron HC & D and Wisdom Industries, Inc., Plaintiffs–Appellees,**

**and**

**State of Hawai'i for the Use and Benefit of Amfac Distribution Hawai'i, Inc., Plaintiff–Intervenor–Appellee,**

**v.**

**TRADEWINDS ELECTRICAL SERVICE & CONTRACTING INC.; United Pacific Insurance Company; Highway Construction, Ltd.; John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Doe Entities 1–10; and Doe Governmental Units 1–10, Defendants–Appellees,**

**and**

**Felix Romero, Defendant–Appellant.**

**No. 16675.**

Supreme Court of Hawai'i.

Dec. 28, 1995.

Thomas R. Cole, on the briefs, Wailuku, Maui, for defendant-appellant Felix Romero.

Russell Y. Tsuji (Reuben S.F. Wong and Erik W. Wong with him on the brief; Law Offices of Reuben S.F. Wong, of counsel), Honolulu, for defendant-appellee Highway Construction, Ltd. and United Pacific Insurance Company.

John A. Hoskins and Patricia K. Wall, Reinwald, O'Connor, Marrack, Hoskins & Playdon, Honolulu, for plaintiffs-appellees Ameron, Inc. dba Ameron HC & D and Wisdom Industries, Inc. (no brief filed).

Sheryl L. Nicholson and Elizabeth Kent (Paul, Johnson, Alston & Hunt, A Law Corporation, of counsel), Honolulu, for plaintiff-intervenor-appellee Amfac Distribution Hawai'i, Inc. (no brief filed).

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Felix Romero (Romero)[1] appeals from the September 30, 1992 order granting defendants-appellees Highway Construction, Ltd. (Highway) and United Pacific Insurance Company's (UPIC) motion for summary judgment. In granting the motion for summary judgment, the circuit court attempted solely to resolve the issue of subrogation. In its order, the circuit court stated that claims for indemnification, reimbursement, and contribution remained undecided and open for future proceedings. Because we hold that genuine issues of material

---

1. Tradewinds Electrical Service & Contracting, Inc., (Tradewinds) was named as a co-defendant with its president, Romero. In 1988, prior to the filing of the initial complaint, Tradewinds filed for bankruptcy. *See infra* at 1206. Tradewinds was not an original defendant in this case, but was added as a named defendant following the United States Bankruptcy Court's order lifting Tradewinds automatic stay. *See infra* at 1207. Throughout the proceedings below and this appeal, Tradewinds has failed to participate in any capacity. Thus, Romero brought this appeal without including Tradewinds as a co-appellant.

fact remain as to whether Romero was personally liable to the creditors of Romero Enterprises, Inc., dba Tradewinds Electrical Service & Contracting (Tradewinds), we affirm in part, vacate the remainder of the summary judgment, and remand the case to the circuit court for further proceedings.[2]

## I. BACKGROUND

On November 19, 1985, the State of Hawai'i (the State) and Highway entered into a contract calling for Highway to serve as general contractor on the "Lagoon Drive Realignment Project" (the project). UPIC was the bonding company for Highway on the project and issued the State a performance bond guaranteeing Highway's performance of the contract.

On January 2, 1986, Highway entered into a contract with Tradewinds, as a subcontractor, obligating Tradewinds to provide electrical subcontracting work on the project in exchange for a given sum. Upon the execution of the subcontracting agreement, Romero, the president of Tradewinds, gave Highway a "personal guarantee" to ensure the performance of the contract, instead of the more commonly used "performance bond."

Relevant to this appeal, Tradewinds contracted with three companies that furnished supplies for the project: (a) Ameron, Inc. (Ameron); (b) Amfac Distribution Hawaii, Inc. (Amfac); and (c) Wisdom Industries, Inc. (Wisdom).

On August 29, 1986, Tradewinds entered into a contract with Ameron, providing that Ameron would furnish materials to Tradewinds. On this same date, Romero entered into a contract with Ameron in which he personally guaranteed the obligations of Tradewinds to Ameron.

On September 10, 1976, many years prior to the project, Felix Romero, on behalf of "Tradewinds Electric," applied for a

$1,500.00 line of credit with Amfac. According to Romero, the "Tradewinds Electric" referred to in the application for credit was a different corporate entity than the one involved in the project. Romero contended that the "Tradewinds" entity involved in the project was not incorporated until February 25, 1985.

Romero never executed an agreement whereby he personally guaranteed the obligations of Tradewinds to Wisdom.

Because Tradewinds was apparently having financial problems, Highway sent a letter to Tradewinds on February 26, 1987, informing Tradewinds in relevant part that:

> The following decisions have been made in view of the deteriorating financial condition of your company:
>
> 1. We will be setting up a payroll account ... for the above project for you.... We will deposit the amount of money to meet payroll for our project every week in time to get your men paid every Friday. The remaining taxes and insurance prorated for our project will also be paid by us to insure no further liability on our part.
>
> 2. We will pay all approved current and past billings on your behalf related to the above project.
>
> 3. [D]ue to the uncertain amounts of money owed to other people we will not be releasing any more money to you until the end of the project or unless you can certify that you are financially able to perform.
>
> We regret having to take this step and hope you can straighten out your affairs as soon as possible.

Throughout the project, Tradewinds purchased materials from Ameron, Wisdom, and Amfac (collectively, "the creditors"). Tradewinds owed Ameron the principal sum of $15,531.33, of which $2,403.51 was for materials purchased after February 26, 1987 (the

---

2. This opinion replaces our previous memorandum opinion dated September 8, 1995. Highway and UPIC filed a motion to reconsider the above dated memorandum opinion, which we subsequently granted on October 2, 1995. Accordingly, we vacate the September 8, 1995 memorandum opinion.

date that the aforementioned letter was sent). Tradewinds owed Wisdom the principal sum of $13,024.22 for materials purchased after February 26, 1987. Tradewinds owed Amfac the principal sum of $57,166.67, of which $26,551.34 was for materials purchased after February 26, 1987. Upon requests for payment, Tradewinds failed to pay each company.

On May 11, 1988, Tradewinds filed for bankruptcy pursuant to Chapter 11 of the United States Code.

Thereafter, Ameron and Wisdom filed a joint complaint on July 24, 1990, naming UPIC, Highway, Romero, and various unknown persons and entities as defendants. On August 16, 1990, Amfac applied to intervene in the proceedings. On October 4, 1990, the circuit court granted Amfac's application for intervention.

On September 25, 1990, the United States Bankruptcy Court filed an order lifting the automatic stay with respect to any and all claims of all parties against Tradewinds in this proceeding. Following the order lifting the automatic stay, Tradewinds was added as a named defendant.

On November 5, 1990, Highway and UPIC filed a joint cross-complaint against Romero and Tradewinds.

On December 28, 1990, Amfac filed a motion for summary judgment against the defendants. On January 22, 1991, Wisdom filed a motion for summary judgment against the defendants. Thereafter, Highway and UPIC moved for summary judgment on their cross-claim against Tradewinds and Romero, requesting that, if the court issued a summary judgment against the defendants in favor of Wisdom or Amfac, the court should in turn grant a summary judgment in their favor against Romero and Tradewinds.

On February 5, 1991, Amfac withdrew its motion for summary judgment. On March 12, 1991, without explanation, the circuit court denied Wisdom's motion for summary judgment. Thereafter, Highway and UPIC withdrew their motion for summary judgment against Romero and Tradewinds.

On April 13, 1992, Highway and UPIC filed a new motion for summary judgment against Tradewinds and Romero on the cross-claim. In the memorandum in support of their motion for summary judgment, Highway and UPIC attached copies of settlement contracts indicating that they had settled their claims with the creditors. According to the settlement contracts, Highway and UPIC jointly paid $20,000.00 to Ameron, $13,024.22 to Wisdom, and $67,000.00 to Amfac. In exchange, the creditors each assigned their respective interests in their claims to Highway and UPIC.

On June 10, 1992, the hearing on the motion for summary judgment was heard in circuit court. Highway and UPIC contended that they were "standing in the shoes" of the creditors—*i.e.*, pursuing the claim under a subrogation theory. Highway and UPIC contended that their motion for summary judgment was based solely on a subrogation theory and did not seek indemnification, reimbursement, or contribution. In response, Romero contended that Highway's letter, dated February 26, 1987, transferred from Tradewinds to Highway the obligations of Tradewinds to the creditors. The circuit court granted the summary judgment.

In its order filed September 30, 1992, the circuit court certified the summary judgment, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b),[3] and indicated that indemnification, reimbursement, and contribution claims still remained in the case. This appeal followed.

3.  HRCP Rule 54(b) provides:

(b) **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or

## II. *STANDARD OF REVIEW*

■ Summary judgment is proper where there is no genuine issue as to any material fact and the moving party clearly demonstrates that it is entitled to judgment as a matter of law. This court applies a standard identical to that utilized by the trial court in its consideration of the motion. The evidence is viewed in the light most favorable to the non-moving party. *Board of Directors of Ass'n of Apartment Owners v. United Pacific Ins. Co.*, 77 Hawai'i 358, 360, 884 P.2d 1134, 1136 (1994).

## III. *DISCUSSION*

Romero contends that: (1) the obligation to pay the creditors was transferred from Tradewinds to Highway by Highway's amendment to the subcontract; (2) the February 26, 1987 letter amended the subcontract, creating an obligation upon Highway to pay Tradewinds' debts to the creditors; and (3) even if he was obligated to pay the creditors, the circuit court erred in granting the motion for summary judgment because there remained genuine issues of material fact. Because we held that there remained genuine issues of material fact as to whether Romero was personally liable to Wisdom and Amfac, we affirm in part and vacate the remainder of the summary judgment.

■ The only issue before this court for appellate review is whether Tradewinds and Romero were jointly and/or severally obligated to pay the creditors for materials purchased in connection with the project. The circuit court specified that the summary judgment was based on a subrogation theory. Subrogation is

> the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. When subrogation occurs, the substitute is put in all respects in the place of the party whose rights [are] subrogated.

In effect, [the substitute] steps into the shoes of the [creditor].

*Peters v. Weatherwax*, 69 Haw. 21, 27, 731 P.2d 157, 161–62 (1987) (citations and internal quotations omitted). Thus, when the creditors assigned their claims in this case to Highway and UPIC, Highway and UPIC in effect "stepped into the shoes" of the creditors and attempted to recover from Tradewinds and Romero the amount of money that was owed to the creditors.

In reviewing Tradewinds's obligations, it is uncontroverted that Tradewinds purchased materials from the creditors for the purpose of fulfilling its obligations towards the project. It is further uncontroverted that Tradewinds had not completely paid the creditors for the purchased materials. Accordingly, the circuit court did not err in holding that Tradewinds was obligated to Highway and UPIC, as the assignees of the creditors.

■ Because the summary judgment also held Romero jointly and severally liable, we must determine whether Romero was personally liable to the creditors. On August 29, 1986, Romero signed a contract with Ameron, personally guaranteeing the obligations of Tradewinds to Ameron. The contract stated:

> In consideration of your extending credit to Romero Enterprises Inc., dba, [Tradewinds], a [Hawai'i] corporation, and other valuable consideration to me individually, I hereby personally guarantee and will be personally responsible for the punctual payment to you of bills incurred for material supplied by you, as well as for any interest, attorneys' fees, and costs resulting from the tardy payment for such materials. This personal guarantee is a continuing one and shall inure to the benefit of yourself, your successors and assigns.

The personal guarantee created a surety relationship among Romero, Tradewinds, and Ameron. *See Motion Picture Indus. Pen-*

other form of decision is subject to revision at any time before the entry of judgment adjudicat-

ing all the claims and the rights and liabilities of all the parties.

sion Plan v. Hawaiian Kona Coast Assocs., 9 Haw.App. 42, 52, 823 P.2d 752, 757 (1991); Hawai'i Revised Statutes (HRS) § 490:1–201(40) (1993).[4] Generally,

> [a] suretyship relationship exists whenever a person becomes responsible for the debt of another. A guarantee is distinguishable from other forms of surety contracts in that it is a separate, independent contract between the guarantor and the creditor-obligee and is collateral to the contractual obligation between the creditor-obligee and the principal-obligor.

*Fehr Bros., Inc. v. Scheinman*, 121 A.D.2d 13, 509 N.Y.S.2d 304, 305–06 (N.Y.App.Div. 1986) (citations omitted). Thus, Romero, individually, was contractually obligated to pay Ameron for any debts incurred by Tradewinds. Accordingly, the circuit court did not err in holding that Romero was liable to Highway and UPIC as the assignees of Ameron.

▆ However, in reviewing the record, it appears that Romero's personal guarantee to Ameron is the only uncontroverted fact that forms the basis for Romero's personal liability. A genuine issue of material fact remains as to whether Romero executed a binding contract with Amfac that created personal liability.

> Being a contract, a guaranty agreement is to be construed like other contracts so as to give effect to the parties' intentions. In particular, the obligations of the guarantor must be strictly construed according to the terms of the agreement and cannot be altered, extended or enlarged by the creditor or debtor without the guarantor's consent, since he [or she] cannot be held responsible to guarantee a performance different from that which he [or she] intended or specified in the guaranty.

> For example, when the guarantor has bound himself [or herself] to satisfy an obligation of a specified debtor, he [or she] may not be held liable for the debt of another debtor, unless the contract clearly discloses such an intent.

*Id.* at 306 (citations omitted). The record indicates that Romero, on behalf of "Tradewinds Electric," signed an application for a $1,500.00 line of credit with Amfac on September 10, 1976. Romero contends that the Tradewinds entity named in the application for credit was a separate and distinct corporate entity from the Tradewinds named in this proceeding. The circuit court never addressed, or ultimately determined, which Tradewinds entity was indicated. Thus, a question remains as to whether the "Tradewinds" named in the application for credit was the same "Tradewinds" that purchased the materials from Amfac for the project.

Moreover, we are not convinced that a 1976·application for a $1,500.00 line of credit obligates Romero personally, as president of Tradewinds, for over $15,000.00 worth of materials purchased more than ten years later. Additionally, the application requested the signature of "an officer of the firm," not a request for a personal guarantee. There is no language indicating that Romero intended to become personally liable to Amfac.

With respect to Wisdom, because the record does not indicate, and the circuit court did not address, whether Romero ever personally guaranteed payment to Wisdom for materials purchased by Tradewinds, there still remains a genuine issue of material fact as to how, if at all, Romero was personally liable to Wisdom.

In granting Highway and UPIC's motion for summary judgment against Tradewinds and Romero, the circuit court concluded, *inter alia*, that Romero was personally liable for the debts owed to the assignees of the creditors—*i.e.*, Highway and UPIC. We hold that no genuine issues of material fact remain as to whether Tradewinds was liable to the creditors for the debts it incurred; however, there are still genuine issues of material fact as to whether Romero was personally liable to Amfac and Wisdom for the debts incurred by Tradewinds. Because the record indicates that Romero issued a binding personal guarantee only to Ameron, and

---

**4.** HRS § 490:1–201(40) provides that " '[s]urety' includes guarantor."

not to Wisdom or Amfac, and because the circuit court did not address whether Romero was personally liable based on any other legal or equitable theory, we hold that the circuit court erred in granting summary judgment as to Romero's obligations, if any, to Amfac and Wisdom.

We emphasize that the summary judgment was based solely on a subrogation theory—*i.e.,* whether Tradewinds and Romero were joint and severally liable to the assignees of the creditors (Highway and UPIC). The summary judgment did not address indemnification, reimbursement, or contribution. As such, the issues primarily addressed by Romero on appeal are misguided. Romero focuses on *who* is ultimately obligated to pay Tradewinds's debts, not whether he was personally liable to the creditors. Romero's personal guarantee to Highway and the February 26, 1987 letter from Highway to Tradewinds generate unresolved questions regarding indemnification, reimbursement, and contribution. Consequently, whether Romero, Highway, or UPIC are obligated to pay for Tradewinds's debts is not presently before this court for appellate review.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the summary judgment in part, holding that Tradewinds is liable to Ameron, Wisdom, and Amfac for debts incurred and that Romero is personally liable to the assignees of Ameron for debts incurred by Tradewinds. However, we vacate the summary judgment in part, holding that genuine issues of material fact remain as to whether Romero is personally liable to the assignees of Wisdom and Amfac. Accordingly, we remand the case to the circuit court for further proceedings consistent with this opinion.