922 P.2d 976

Grisell HUNT, Plaintiff–Appellant,

v.

FIRST INSURANCE COMPANY OF HA-
WAII, LTD., Joanne Toby Vogel, John
Does 1–10, Jane Does 1–10, Doe Corpora-
tions 1–10, Doe Partnerships 1–10, Doe
Joint Ventures 1–10, and Doe Govern-
mental Entities 1–10, Inclusive, Defen-
dants–Appellees.

No. 16515.

Intermediate Court of Appeals of Hawai'i.

May 9, 1996.

Certiorari Granted May 24, 1996.

Certiorari Dismissed by Stipulation
Sept. 23, 1996.

Dwayne Stephen Lerma and Jo Anne E. Goya (Lerma & Goya, of counsel), on the briefs, Hilo, for plaintiff-appellant.

Robert P. Richards, Ralph J. O'Neill and L. Darlene Mitchell (Reid, Richards & Miya-

gi, of counsel), on the briefs, Honolulu, for defendants-appellees First Insurance Company of Hawaii, Ltd. and Joanne Toby Vogel.

Before ACOBA and KIRIMITSU, JJ., and Circuit Judge BLONDIN in place of BURNS, C.J., Recused.

KIRIMITSU, Judge.

In an insurance contract dispute, plaintiff-appellant Grisell Hunt (Hunt) appeals from the Third Circuit Court's (1) August 13, 1992 Order Granting Partial Summary Judgment; (2) September 16, 1992 Order Denying Plaintiff's Motion for Reconsideration and Granting Plaintiff's Request for Rule 54(b) Certification of the Order Granting Motion for Partial Summary Judgment filed herein on August 13, 1992; and (3) September 24, 1992 Final Judgment Upon Less Than All of the Claims. All of the foregoing were filed in favor of defendants-appellees First Insurance Company of Hawaii, Ltd. (First Insurance) and Joanne Toby Vogel (Vogel).[1]

For the reasons stated below, we affirm in part and vacate in part.

## I. *BACKGROUND*

On July 10, 1990, Hunt sustained injuries after she slipped and fell on WD–40 lubricant while grocery shopping at the KTA Super Stores (KTA) in Hilo, Hawai'i. At the time of Hunt's slip and fall, KTA was covered by a commercial general liability policy (Policy), policy no. CPP 7018785 01, issued by First Insurance. This Policy included, *inter alia,* a medical payment coverage, requiring First Insurance to pay medical expenses for bodily injury caused by accidents at KTA.

On September 4, 1990, Hunt's attorneys contacted First Insurance and requested information about the medical-payment coverage limits of First Insurance's Policy that was effective at Hunt's July 10, 1990 slip and fall.

On September 11, 1990, Michael Anderson (Anderson), a claims adjuster for First Insurance, responded to the September 4, 1990 letter and advised Hunt that the medical payment coverage limit was $5,000. To process Hunt's medical payments, Anderson explained that First Insurance needed a signed medical authorization, copies of medical bills, and names of medical providers. However, Anderson made no mention of any time limit for Hunt to submit. her claim for medical expenses.

On November 5, 1990, Hunt submitted a signed medical authorization to First Insurance. On various dates covering the period from July 31, 1990 through August 26, 1991, Hunt submitted demands to First Insurance for payment of medical bills and included copies of the bills from Hunt's medical providers.[2] According to Hunt, First Insurance paid 100% of Hunt's initial four demands for payments which included the cost for missed appointments as well.

On January 28, 1991, First Insurance informed Hunt that her claims adjuster, Anderson, was no longer working for First Insurance and that her claims were reassigned to another claims adjuster, Vogel. First Insurance also notified Hunt that it would not be able to process her pending, current, and future claims until it brought its files up to date. For example, First Insurance awaited a medical report concerning Hunt's current course of treatment and whether any apportionment was warranted due to Hunt's previous injuries sustained in an automobile accident on or about April 4, 1990. Subsequently, First Insurance denied all of Hunt's requests to Vogel for payment of medical expenses, including the request for expenses to consult with a Honolulu medical specialist.

In a letter dated July 29, 1991, First Insurance informed Hunt that it would pay its 30% apportionment of Hunt's medical expenses incurred through July 10, 1991, when the coverage for medical expenses expired, or up

---

1. At all relevant times, Joanne Toby Vogel was a claims adjuster for First Insurance Company of Hawaii, Ltd. (First Insurance).

2. Some of these bills included charges for missed, cancelled, or late appointments. Plain-

tiff-appellant Grisell Hunt (Hunt) also billed First Insurance for airfare, car rental, and hotel accommodations related to an August 12, 1991 appointment with a physician on O'ahu.

to the Policy's limit of $5,000. Although offering no clear basis for this 30% apportionment, First Insurance's July 29, 1991 letter suggests that this apportionment was based in part on preexisting injuries that Hunt sustained in an earlier automobile accident on or about April 4, 1990. The letter further stated that as of July 29, 1991, "[First Insurance] paid a total of $1,636.04 in medical expenses on behalf of [Hunt]."

On August 8, 1991, Hunt informed First Insurance that, *inter alia*, (1) she had previously requested a copy of the applicable Policy, but First Insurance intentionally withheld a copy, and (2) First Insurance's actions with regard to Hunt's medical claims constituted malicious and unfair settlement practices.

On August 22, 1991, First Insurance responded that "Hawaii law does not require that we provide a copy [of the Policy]." First Insurance further stated: "With regard to your allegations of unfair claims settlement practices, our review of the files shows no indication that we mishandled [Hunt's] claim."

On August 27, 1991, Hunt filed her Complaint against First Insurance and Vogel (hereinafter collectively, First Insurance) alleging, *inter alia*, breach of the KTA insurance contract, bad faith breach of the insurance contract, and various violations of Hawai'i Revised Statutes (HRS) Chapters 431 (Insurance Code) and 480 (Monopolies; Restraint of Trade).[3]

On May 8, 1992, First Insurance filed a motion for partial summary judgment. On August 13, 1992, the circuit court filed its Order Granting Motion for Partial Summary Judgment ruling that:

1. [Hunt], the injured third party, does not have privity with [First Insurance], the insurer, *Olekele [sic] Sugar Co. v. McCabe, Hamilton & Renny Co.*, 53 Haw. 69, 487 P.2d 769 (1971);

2. [Hunt] does not have a private cause of action pursuant to HRS, section 431:13–103; and

3. [Hunt] does not have a cause of action under HRS, sections 480–2 and 480–13, nor for the violation of the above-statutes.

On August 19, 1992, Hunt filed Plaintiff's Motion for Reconsideration of Order Granting Partial Summary Judgment filed on August 13, 1992. On September 16, 1992, the circuit court filed its Order Denying Plaintiff's Motion for Reconsideration and Granting Plaintiff's Request for Rule 54(b) Certification of the Order Granting Motion for Partial Summary Judgment filed on August 13, 1992. Thereafter, Hunt filed a timely notice of appeal.

## II. STANDARD OF REVIEW

■ A summary judgment order is reviewed under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting Inc.*, 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Summary judgment is proper where, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party clearly demonstrates that he or she is entitled to judgment as a matter of law. *Id.*

■ The construction and legal effect given an insurance contract provision governing the right to medical expenses under the Policy is a question of law, which we review *de novo*. *Romero v. Hariri*, 80 Hawai'i 450, 459, 911 P.2d 85, 94 (App.1996) (citing *Hawaiian Isles Enter. Inc. v. City and County of Honolulu*, 76 Hawai'i 487, 489, 879 P.2d 1070, 1072 (1994)).

■ The question of whether Hunt has a private cause of action under HRS § 431:13–103, HRS § 480–2, and HRS § 480–13 is also a question of law, which we review *de novo*. *BLT Advertisement Co., Inc. v. Edades*, 80 Hawai'i 270, 272, 909 P.2d 598, 600 (App. 1995) (citing *Kuhnert v. Allison*, 76 Hawai'i 39, 43, 868 P.2d 457, 461 (1994)).

---

**3.** Hunt also filed a liability action against KTA Super Stores (KTA) in *Hunt v. Puna Plantation Hawaii, Ltd. dba KTA Super Stores, et al.*, Civil No. 92–142. However, Hunt's lawsuit against KTA is not at issue in the instant case.

## III. *DISCUSSION*

The dispositive issue on appeal is whether the trial court erred in granting First Insurance's motion for partial summary judgment. In granting this partial summary judgment, the circuit court ruled that: (1) Hunt does not have privity with First Insurance; (2) Hunt does not have a private cause of action pursuant to HRS § 431:13–103; and (3) Hunt does not have a cause of action under HRS §§ 480–2 and –13. On appeal, Hunt challenges all three rulings.

A. *The trial court erred in granting partial summary judgment on the breach of contract claim on the grounds of Hunt's lack of privity with First Insurance.*

■ Privity of contract is "[t]hat connection or relationship which exists between two or more contracting parties." *Black's Law Dictionary* 1199 (6th ed. 1990). However, the absence of privity is generally not a valid defense in actions for damages in contract, since courts have, *inter alia*, "extended the right to sue for injuries or damages to third party beneficiaries[.]" *Id.* (citation omitted). *See, e.g., Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 128 n. 12, 883 P.2d 38, 65 n. 12 (recognizing non-contracting parties' rights as third party beneficiaries of an insurance contract), *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994).

■ A third party beneficiary is "[o]ne for whose benefit a promise is made in a contract but who is not a party to the contract." *Black's Law Dictionary* at 1480 (quoting *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 299 N.E.2d 295, 297 (1973)). "[T]he rights of the third [party beneficiary] . . . must be limited to the terms of the promise[,]" and this promise "may be express or it may be implied from the circumstances[.]" *Remington Typewriter Co., Inc. v. Kellogg*, 19 Haw. 636, 640 (1909) (internal quotation marks and citation omitted).

■ Furthermore, "[a] prime requisite to the status of 'third party beneficiary' under a contract is that the parties to the contract must have intended to benefit the third party, who must be something more than a mere incidental beneficiary." *Black's Law Dictionary* at 1480 (quoting *McKinney v. Davis*, 84 N.M. 352, 353, 503 P.2d 332, 333 (1972)). For example, if contracting parties intend to confer direct benefits on a third party, that third party will have generally an enforceable contractual right. *See Villa Sierra Condominium Ass'n. v. Field Corp.*, 878 P.2d 161, 166 (Colo.App.1994) (recognizing the rights of third parties who were not signatories to a construction contract); *Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 409, 417, 871 P.2d 826, 834 (1994) (concluding that non-parties to a contract bond were intended third party beneficiaries).

1. *Hunt may enforce the contract as an intended third party beneficiary.*

■ Hunt's Complaint asserts a cause of action for breach of contract. Hunt alleges wrongful conduct in the handling of her claim for payment of medical expenses under the Policy issued by First Insurance to its insured, KTA.

Upon the review of the Policy, we conclude that Hunt is entitled to medical benefits as an intended third party beneficiary under the insurance contract between KTA and First Insurance. Coverage C of the Policy provides in relevant part:

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement.**

 **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

 (1) On premises you own or rent;

 . . . .

 **b.** *We will make these payments regardless of fault.* These payments will not exceed the applicable [$5,000] limit of insurance.[4] We will pay for reasonable medical expenses for:

 (1) First aid at the time of an accident;

---

**4.** KTA's commercial general liability policy with First Insurance provides that the "MEDICAL EXPENSE LIMIT" for "ANY ONE PERSON" is "$5,000."

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury:"

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard."

**g.** Excluded under Coverage A.[5]

**h.** Due to war, whether or not declared, or any act or condition incident

5. Coverage A provides in relevant part:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

....

**2. Exclusions.**
This insurance does not apply to:
**a.** "Bodily injury" ... expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
**b.** "Bodily injury" ... for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) Assumed in a contract or agreement that is an "insured contract;" or
(2) That the insured would have in the absence of the contract or agreement.
**c.** "Bodily injury" ... for which any insured may be held liable by reason of:
(1) Causing or contributing to the intoxication of any person;

to war. War includes civil war, insurrection, rebellion or revolution.

(Emphasis added.) A plain reading of the medical payments section of the Policy indicates that this provision is intended to confer separate and distinct benefits directly on third parties injured on KTA's premises. In addition, because this provision does not exclude coverage for KTA customers, we conclude that such injured customers are intended third party beneficiaries of the Policy.

Because Hunt, a customer, suffered injuries on KTA's premises and because the Policy provides medical payments to reimburse KTA customers for such injuries, we hold that Hunt is an intended third party beneficiary who has enforceable contractual rights under the Policy issued by First Insurance.

**2. *Hunt's lawsuit against First Insurance is ripe.***

First Insurance appears to argue that Hunt has no contractual rights under the Policy because the Policy only permits direct actions against First Insurance if a settlement or judgment is first obtained against the insured, *i.e.*, KTA. Because Hunt has not yet secured a settlement or final judgment against KTA, First Insurance seems to contend that Hunt's Complaint is not ripe. We disagree.

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages....
**d.** Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law:
**e.** "Bodily injury" to:
(1) An employee of the insured arising out of and in the course of employment by the insured; or
(2) The spouse, child, parent, brother or sister of that employee as a consequence of the (1) above.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an "insured contract."

The Policy does restrict who may bring a liability action against First Insurance. Section IV of the Policy provides:

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

### 3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial . . . . An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

While this provision generally restricts direct actions against First Insurance, we conclude that this provision is not applicable to Hunt because her claims are filed under the medical payments provision of the Policy and are based on contract, not liability.

In *Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.,* 53 Haw. 69, 487 P.2d 769 (1971), a stevedoring firm was engaged in off-loading a truck from a vessel and to a trailer when the truck slipped from a sling and fell on the trailer—damaging both the truck and the trailer. The owner of the truck and the owner of the trailer (collectively, the plaintiffs) sued the stevedoring firm and the firm's insurer for property damage. The trial court subsequently dismissed the plaintiffs' claims against insurer for failure to state a claim upon which relief can be granted. The plaintiffs appealed this dismissal. *Id.* at 69, 487 P.2d at 770.

On appeal, the Hawai'i Supreme Court affirmed the trial court's judgment. *Id.* at 72, 487 P.2d at 771. In so holding, the Hawai'i Supreme Court stated:

In determining the insured's liability, joinder of or a direct action against the insurer is generally prohibited unless statutorily or contractually permitted. The reasons ascribed for the rule are varied although a deep-seated reason is simply that the courts feel that it would not be sound public policy to permit the insurer to be joined as a defendant, in deference to what is believed to be a jury's tendency to find negligence or to augment the damages, if it thinks that an affluent institution such as an insurance company will bear the loss.

*Id.* at 71, 487 P.2d at 770 (citing 8 Appleman, *Insurance Law and Practice,* § 4861, at 294 (1962)).

In the instant case, Section IV of the Policy clearly restricts liability actions directly against First Insurance unless a settlement or final judgment against the insured is first obtained. Accordingly, unless Hunt obtained such a settlement or judgment against KTA, *Olokele* would prohibit Hunt from directly suing First Insurance for any tort committed by KTA.

 In contrast, Hunt's claim in the instant case is based on contract rather than tort. Hunt's rights as an intended third party beneficiary do not arise through the negligence of the insured, KTA, but rather through a contractual obligation conferred by First Insurance. *See* discussion, *supra,* at 367–369, 922 P.2d at 980–82. Therefore, because the liability of KTA is not at issue in the instant case, we conclude that the general prohibition on direct action against the insurer as set forth in *Olokele* is not applicable in the instant case. *See Desmond v. American Ins. Co.,* 786 S.W.2d 144, 145 (Mo. App.1989) (holding that an injured theater patron was entitled to bring a direct action against the theater's insurer based on a medical payment provision in the insurer's liability insurance policy); *Maxwell v. Southern Am. Fire Ins. Co.,* 235 So.2d 768, 770 (Fla. Dist.Ct.App.1970) (allowing an injured pedestrian to bring a direct action for medical expenses against the insurer because the pedestrian was a third party beneficiary under the medical payment provision of a homeowner policy). *See also* 8A Appleman, *Insurance Law and Practice* § 4902.05 at 232–33 (1981) (recognizing that the purpose of a

medical payment provision in liability insurance policy is to ensure the payment of medical expenses of the injured party).

Accordingly, because Hunt is an intended third party beneficiary to the medical payment provision of the Policy and because nothing in the Policy restricts Hunt from filing a direct action against First Insurance, we hold that Hunt's claim against First Insurance is ripe.

Having held that Hunt is an intended third party beneficiary who has an enforceable contractual right for medical expenses under the Policy, we vacate that part of the August 13, 1992 Order Granting Motion for Partial Summary Judgment that precludes the breach of contract claim based on lack of

privity and remand this matter for further proceedings consistent with this opinion.

B. *Hunt does not have a private cause of action pursuant to HRS Chapter 431, Article 13.*

In granting First Insurance's motion for partial summary judgment, the trial court ruled that Hunt does not have a private cause of action pursuant to HRS Chapter 431, Article 13, which includes, *inter alia*, prohibitions against unfair claim settlement practices as defined by HRS § 431:13–103(a)(10) (1993).[6]

A plain reading of the language of Article 13 supports the trial court's ruling. For example, HRS § 431:13–101 (1993)[7] pro-

---

**6.** HRS § 431:13–103(a)(10) (1993) provides in relevant part:

**Unfair methods of competition and unfair or deceptive acts or practices defined.** (a) The following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

. . . .

(10) Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following:

(A) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(B) With respect to claims arising under its policies, failing to respond with reasonable promptness, in no case more than fifteen working days, to communications received from:

. . . .

(ii) Any other persons, including the commissioner[.]

. . . .

The response shall be more than an acknowledgement that such a person's communication has been received, and shall adequately address the concerns stated in the communication;

(C) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(D) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(E) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(F) Failing to offer payment within thirty calendar days of affirmation of liability, if the amount of the claim has been determined and is not in dispute;

(G) Failing to provide the insured, or when applicable the insured's beneficiary, with a

reasonable written explanation for any delay, on every claim remaining unresolved for thirty calendar days from the date it was reported;

(H) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(I) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds;

(J) Attempting to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or printed advertising material accompanying or made part of an application;

. . . .

(L) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made;

. . . .

(P) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. . . .

**7.** HRS § 431:13–101 (1993) provides in relevant part:

The purpose of … [Article 13] is to *regulate* trade practice in the business of insurance … by defining, or providing for the determination of, all acts, methods, and practices which constitute unfair methods of competition or unfair or deceptive acts or practices in this State, and by prohibiting the trade practices so defined or determined.

(Emphasis added.)

vides that the purpose of Article 13 is to set forth an overall regulatory scheme to address the problems of "unfair methods of competition [and] unfair [and] deceptive acts [and] practices" in the business of insurance. In addition, HRS § 431:13–107 (1993) [8] limits enforcement of this article to the State Insurance Commissioner—a further indication that Article 13 is directed more toward regulatory, as opposed to private, enforcement. Moreover, Article 13 only provides administrative remedies and penalties for violations of this article.[9] The remedies and penalties include cease and desist orders, fines, and/or suspension or revocation of a person's insurance license. Nothing in the plain language of Article 13 expressly provides for a private cause of action for persons injured by insurance companies who violate this article.

However, on appeal, Hunt contends that an implied private cause of action exists for violation of HRS Chapter 431, Article 13, because the state legislature enacted Article 13 to protect the rights of insurance consumers in Hawai'i and nothing in the legislative history of Article 13 prohibits a private cause of action.

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted' ...—that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ..."

*Reliable Collection Agency, Ltd. v. Cole,* 59 Haw. 503, 507, 584 P.2d 107, 109 (1978) (quoting *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)) (emphasis in original omitted).

A review of the relevant legislative history of Article 13 fails to indicate a legislative intent to either create or deny a private cause of action. Specifically, Sen. Stand.Comm.Rep. No. 1715, in 1989 Senate Journal, at 1423, states:

[T]his bill and Act 97, Session Laws of Hawaii 1987, are not intended to indicate legislative support or objection to recognition of a statutory private cause of action with respect to violations of Article 13 of the Insurance Code. This bill and Act 97 are also not intended to impair the courts'

8. HRS § 431:13–107 (1993) provides: "All remedies, penalties and proceedings set forth in this article are to be invoked *solely and exclusively* by the commissioner." (Emphasis added.)

9. HRS §§ 431:13–201 and –202 (1993) set forth the remedies and penalties for violating HRS Chapter 431, Article 13.

HRS § 431:13–201 provides in relevant part:
**Cease and desist and penalty orders; judicial review.** (a) If ... the commissioner shall determine that the person charged has engaged in an unfair method of competition or an unfair or deceptive act or practice, the commissioner shall reduce the findings to writing and shall issue and cause to be served upon the person charged with the violation a copy of the findings and an order to cease and desist from engaging in the method of competition, act or practice. If the act or practice is a violation of HRS § 431:13–103 [ (Unfair methods of competition and unfair or deceptive acts or practices defined) ], the commissioner may ... order any one or more of the following:
(1) Payment of a fine of not more than $1,000 for each and every act or violation but not to exceed $10,000, unless the person knew or reasonably should have known that the person was in violation of section 431:13–103, in which case the fine shall not be more than $5,000 for each and every act or violation but not to exceed $50,000 in any six month period.
(2) Suspension or revocation of the person's license, if the person knew or reasonably should have known that the person was in violation of section 431:13–103.
HRS § 431:13–202 provides:
**Penalty for violation of cease and desist orders.** (a) Any person who violates a cease and desist order of the commissioner under section 431:13–201 may be subject at the discretion of the commissioner, after notice and hearing and upon order of the commissioner, to either or both of the following:
(1) A fine of not more than $10,000 for each and every act in violation of the cease and desist order; or
(2) Suspension or revocation of the person's license.
(b) No order of the commissioner pursuant to this section or order of court to enforce it shall in any way relieve or absolve any person affected by the order from any other liability, penalty, or forfeiture required by law.

ability to recognize or decline to recognize such a right.

Because Hawai'i courts have never addressed the issue of whether a private cause of action exists under Article 13, this issue is one of first impression.

Article 13 is modeled after the National Association of Insurance Commissioner's (NAIC) Model Unfair Claims Practices Act (Model Act), which has been adopted by at least 48 states. *See* House Stand.Comm. Rep. No. 395, in 1983 House Journal, at 1015; *Moradi–Shalal v. Fireman's Fund Ins.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 121–22, 758 P.2d 58, 63 *reh'g denied* (1988). The great majority of these state versions of the Model Act have been held not to create a private cause of action.[10] *Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233, 235 (Minn. 1986) (recognizing this majority view). In addition, the 1980 Report of the NAIC has stated explicitly that the Model Act " 'does not contain an individual right of action provision[.]' " *Moradi–Shalal*, 250 Cal.Rptr. at 123, 758 P.2d at 65 (quoting 2 N.A.I.C. Proceedings (1980) 345–46)). Moreover, HRS § 431:13–202(b) provides: "No order of the commissioner . . . shall in any way relieve or absolve any person affected by the order from any *other* liability, penalty, or forfeiture required by law." (Emphasis added.) Other jurisdictions with a similar statutory provision have found that the term "other" supports denying a private cause of action because the term indicates that liability against insurer must be found outside of the statute. *See, e.g., Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 688, 393 N.E.2d 718, 724 (1979); *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 42 (Iowa 1982).

Accordingly, in light of the legislative scheme, the NAIC Report, and the majority view that the Unfair Claims Practices Act was not intended to create any private cause of action, we hold that no private cause of action exists under HRS Chapter 431, Article 13.

**10.** Only two states, Montana and West Virginia, recognize a statutory cause of action for private litigants. *See Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065 (Mont.1983), *superseded in part by statute, O'Fallon v. Farmers Ins. Exchange*, 260 Mont. 233, 859 P.2d 1008, 1014–15 (1993); *Jen-*

C. *Hunt has no cause of action under HRS § 480–2 and § 480–13 (1993).*

Hunt contends that the trial court erred when it ruled that: "[Hunt] does not have a cause of action under HRS, sections 480–2 and 480–13, nor for the violation of the above-statutes." Hunt appears to argue that because First Insurance engaged in unfair and deceptive acts or practices in violation of HRS Chapter 480, she is entitled to a private cause of action pursuant to HRS Chapter 480.

HRS Chapter 480 prohibits monopolies and restraint of trade. Specifically, HRS § 480–2 sets forth a general prohibition against unfair or deceptive acts or practices in the conduct of any trade or commerce, and HRS § 480–13 provides a private cause of action against anyone violating HRS § 480–2. While HRS Chapter 480 authorizes private causes against those engaging in unfair or deceptive acts or practices in the conduct of any trade or commerce, both HRS §§ 480–2 and –13 limit private causes of action to "consumers."

HRS § 480–2 provides in relevant part:

**Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

. . . .

(d) No person other than *a consumer,* the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

(Emphasis added.) HRS § 480–13(b) provides:

(b) *Any consumer* who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:

*kins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981), *overruled on other grounds, State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 159, 451 S.E.2d 721, 725 (1994).

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the costs of the suit;

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys fees together with the cost of suit.

(Emphasis added.) In light of the plain and unambiguous language of HRS §§ 480–2 and –13, the question before this court is whether Hunt is a "consumer" as defined by HRS Chapter 480.

HRS § 480–1 (1993) defines a "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."

However, nowhere in the record does Hunt indicate or allege that she (1) purchased or attempted to purchase, or was solicited to purchase goods or services from First Insurance or (2) committed money, property, or services in a personal investment. Because she failed to allege the foregoing, Hunt is not a "consumer" as defined by HRS Chapter 480 and, therefore, lacks standing to maintain a private cause of action pursuant to HRS § 480–13.

Hunt insists that she does have standing. Hunt claims that "as a beneficiary under KTA Super Store's insurance contract issued by [First Insurance], [she] may assert all contractual rights under the insurance contract which are available to the named insured, KTA Super Stores." Accordingly, Hunt contends that she "should be allowed to maintain her cause of action under HRS § 480–2 and HRS § 480–13."

Hunt's argument is without merit. As discussed, *supra*, HRS §§ 480–2 and –13 limits private causes of action, based upon unfair and deceptive acts or practices, to "consumers." HRS § 480–1 defines a "consumer" as a "natural person." Because KTA is not a "natural person," it is also not a "consumer" as defined by HRS § 480–1 and, therefore, has no private cause of action pursuant to HRS § 480–13. Accordingly, because KTA has no private cause of action pursuant to HRS § 480–13, Hunt also has no derivative claim on this ground.

By the above holding, however, we do not address the issue of whether a person has standing to maintain a cause of action under HRS §§ 480–2 and –13 by virtue of the person's status as a third party beneficiary.

## IV. CONCLUSION

For the aforesaid reasons, we vacate that part of the August 13, 1992 Order Granting Motion for Partial Summary Judgment that precludes Hunt's breach of contract claim based on lack of privity and remand this case for proceedings consistent with this opinion. With regard to all other parts of that August 13, 1992 order, we affirm.[11]

---

**11.** Hunt also appeals the September 16, 1992 Order Denying Plaintiff's Motion for Reconsideration and Granting Plaintiff's Request for Rule 54(b) Certification of the Order Granting Motion for Partial Summary Judgment filed herein on August 13, 1992 and the September 24, 1992 Final Judgment Upon Less Than All of the Claims. However, because we reverse in part the August 13, 1992 Order Granting Partial Summary Judgment, Hunt's remaining issues on appeal are moot.