927 P.2d 858

**Jeffrey J. HOUGH and Terry Medeiros Hough, Plaintiffs–Appellants,**

v.

**PACIFIC INSURANCE COMPANY, LTD., a Hawai'i corporation, Sentinel Insurance Company, Ltd., Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, and The Hartford Insurance Group, John Does 5–10, Doe Partnerships, Corporations, and/or Other Entities, Defendants–Appellees.**

No. 16019.

Supreme Court of Hawai'i.

Nov. 26, 1996.

As Amended Dec. 4, 1996.

---

458

Peter Van Name Esser and Willard J. Peterson of Peterson and Esser, on the briefs, Honolulu, for plaintiffs-appellants Jeffrey Hough and Terry Medeiros Hough.

James F. Ventura, John S. Nishimoto, Calvin E. Young and Diane W. Wong of Libkuman, Ventura, Ayabe, Chong & Nishimoto nka Ayabe, Chong, Nishimoto, Sia & Nakamura, on the briefs, Honolulu, for defendants-appellees Pacific Insurance Company Ltd., Sentinel Insurance Company, Ltd., Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, and The Hartford Insurance Group.

MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and Circuit Judge MILKS, in place of KLEIN, J., Recused.

MOON, Chief Justice.

Plaintiffs-appellants Jeffrey J. Hough (Hough or claimant) and his wife, Terry Medeiros Hough (collectively, the Houghs), appeal from: (1) the order, filed on August 2, 1991, granting in part and denying in part defendants-appellees Pacific Insurance Company, Ltd., Sentinel Insurance Company, Ltd., Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, and The Hartford Insurance Group's [hereinafter, collectively, Pacific][1] motion for summary judgment; (2) the order, filed on March 19, 1992, granting Pacific's motion for summary judgment; and (3) the judgment and notice of entry of judgment, filed on March 25, 1992.

In this appeal, we are presented with the question whether a worker who originally sustains an injury covered by Hawai'i Revised Statutes (HRS) Chapter 386 (1993),[2] Hawai'i's Workers' Compensation Law, is

---

1. Defendant-appellee Sentinel Insurance Co., Ltd. sold the workers' compensation insurance policy at issue in this case to Hough's employers. Defendants-appellees Hartford Accident and Indemnity Co., Ltd., Hartford Fire Insurance Co. and The Hartford Insurance Group own and operate Pacific Insurance Company.

2. Citations to the provisions of HRS Chapter 386 refer to the 1993 Replacement. Unless otherwise indicated, the provisions are unchanged from the version in effect at the relevant time.

precluded from bringing a separate claim for damages against the workers' compensation insurer where the separate claim is based on allegations that the insurer committed intentional torts and acted in bad faith in processing the worker's compensation claim, causing separate and additional injury to the worker. For the reasons discussed below, we answer in the negative and vacate all orders granting summary judgment in favor of Pacific, except for: (1) that part of the August 2, 1991 order granting Pacific's motion for summary judgment on Hough's claims under Hawaii Revised Statutes (HRS) Chapters 386, 431, and 480; and (2) that part of the March 19, 1992 order granting Pacific's motion for summary judgment on Hough's claims for breach of fiduciary duty.

## I. BACKGROUND

On March 13, 1985, Hough injured his back during the course and scope of his employment with Ramco, Inc. (Ramco), a construction firm.[3] Thereafter, Hough continued to experience back pain and, on June 22, 1987, while working for Royal Contracting Co., Ltd. (Royal), he suffered a recurrence of the March 13, 1985 injury, resulting in temporary total disability.

Hough timely filed a claim for workers' compensation benefits with both Ramco and Royal. As the workers' compensation insurance carrier for both Ramco and Royal, Pacific initially made payments, under protest. However, on August 11, 1987, Pacific terminated all benefits.

On December 10, 1987, when Hough was still not being paid benefits for either the 1985 or 1987 injuries, Hough's physician, Donald E. Nicol, M.D., wrote Pacific, noting that:

My concern with Mr. Hough is that stress may be contributing to his delayed convalescence from his low back injury....
Mr. Hough wears a lumbosacral belt while awake. He receives trigger point injections of corticosteroids bimonthly in my office, and his medications include Dar-

vocet–N–100 on an ad lib basis. My records reveal an average use of # 120 Parafon Forte and # 30 Darvocet–N–100 per month.

. . . .

Although his injury was work related, his 1985 employer denied responsibility by claiming his injury was "new" which in my opinion it was not, and his 1987 employer denied responsibility by claiming there was no definite injury of Mr. Hough while he worked for them. Although Pacific Insurance was the carrier for both employers, they refused to pay Mr. Hough under either policy while at the same time acknowledging that one policy or the other was responsible. Thus was Mr. Hough caught in a classic "catch 22".

I treated Mr. Hough during the period when he was attempting to deal with the insurance company and the strain on his day to day existence was obvious. He depleted his savings, sold his only car and eventually allowed his wife to start working. His marriage relationship grew strained, he has become withdrawn, and friends and family worried about possible self-destructive actions.

A psychiatrist who examined Hough, Mark Dillen Stitham, M.D., found that:

[Hough] has been suicidal at times but thinks of his children. Crying is admitted when alone. Appetite is increased with 25 pound[s of] weight gain.

. . . .

This young man appears to have both endogenous and exogenous features of depression complicated by ethanol abuse.

After a complaint for reinstatement of benefits was filed with the Director of the State Department of Labor and Industrial Relations's (DLIR) Disability Compensation Division, the Director determined that:

Both Dr. Nicol's report dated July 22, 1987 and Dr. Ishida's report dated August 4, 1987 indicate a recurrence in June 1987. Significantly, Dr. Ishida's report emphasized that claimant had continued to experience "constant backaches" that had not

---

**3.** Consistent with the applicable standard of review, the facts of this case are viewed in the light most favorable to the Houghs, the non-moving parties.

resolved since April 1985. Nevertheless, Ramco, Inc./Pacific chose to ignore the substance of these reports and focused on Dr. Nicol's imprecise use of the term "aggravation" as its excuse for unreasonable termination of benefits by letter dated August 11, 1987.

Moreover, Pacific terminated benefits when it knew or should have known that Pacific was the carrier for both the 1985 and 1987 claims, and that, in the event Ramco, Inc. was found not liable for the 1987 injury, a simple bookkeeping adjustment would have resolved the matter. Ramco, Inc./Pacific's retroactive[4] termination of benefits constituted a clear violation of Section 386-31, HRS, particularly when the medical evidence in Ramco, Inc./Pacific's possession indicated claimant was unable to resume work, and Ramco, Inc./Pacific knew claimant was unrepresented at that time. Such unlawful termination of benefits caused claimant, quite unreasonably, to go without benefits from August 1987 to February 1988 when it was clear that liability would attach to one of Pacific's employers.

The Director, thereafter, ordered that: (1) Ramco/Pacific pay for the medical expenses incurred to treat the 1985 injury and the 1987 recurrence, pursuant to HRS §§ 386–21 and –26;[5] (2) Ramco/Pacific pay Hough weekly compensation of $291.00, beginning June 22, 1987 "and terminating at such time as is determined by the director that such disability has ended[ ]" pursuant to HRS § 386–31(b);[6] (3) Ramco/Pacific pay $250.00 into the Special Compensation Fund, pursuant to HRS § 386–31(b); (4) Ramco/Pacific pay Hough $739.97 as a penalty, representing 10% of the unpaid compensation due claimant from August 10, 1987 through February 3, 1988, pursuant to HRS § 386–92;[7] (5) Ramco/Pacific reimburse Royal the amount of $9,063.00, pursuant to Hawai'i Administrative Rules (HAR) § 12–10–34 (1985).[8]

4. Nothing in the letter terminating benefits indicated that the termination was intended to be retroactive. However, at the DLIR hearing, Pacific took the position that it was entitled to reimbursement of the benefits paid under protest. This is apparently what the Director was referring to by use of the phrase "retroactive termination."

5. HRS § 386–21 provides in relevant part:

 **Medical care, services and supplies.** (a) Immediately after a work injury sustained by an employee and so long as reasonably needed the employer shall furnish to the employee all medical care, services, and supplies as the nature of the injury requires.

 HRS § 386–26 provides in relevant part:

 **Guidelines on frequency of treatment and reasonable utilization of health care and services.** The director shall issue guidelines for the frequency of treatment and for reasonable utilization of medical care and services by health care providers which are considered necessary and appropriate under this chapter.

6. HRS § 386–31(b) provides in relevant part:

 Where a work injury causes total disability not determined to be permanent in character, the employer, for the duration of the disability but not including the first three calendar days thereof, shall pay the injured employee a weekly benefit at the rate of sixty-six and two-thirds percent of the employee's average weekly wages....

An employer or insurance carrier who fails to comply with this section shall pay not more than $2,500 into the special compensation fund upon the order of the director....

When the Director's order was filed, HRS § 386–31(b) provided for a penalty of $250.00. HRS § 386–31(b) (1985).

7. HRS § 386–92 provides in relevant part:

 [I]f any temporary total disability benefits are not paid by such employer or carrier within ten days, exclusive of Saturdays, Sundays, and holidays, after being notified of the disability, and where the right to such benefits are not controverted in the employer's initial report of the industrial injury or where temporary total disability benefits are terminated in violation of section 386–31, there shall be added to the unpaid compensation an amount equal to ten percent thereof payable at the same time as, but in addition to, the compensation, unless the nonpayment is excused by the director after a showing by the employer or insurance carrier that the payment of the compensation could not be made on the date prescribed therefor owing to the conditions over which the employer or carrier had no control.

 HRS § 386–92 has been amended to require a penalty of twenty percent of the compensation payable. *See* 1995 Sess. L. Haw. Act 234, § 14 at 613.

8. HAR § 12–10–34 provides in relevant part that, "[w]hen a liability determination is made, the liable employer, if not the last employer, shall reimburse the last employer."

The Houghs filed a complaint against Pacific in the First Circuit Court on February 10, 1989. In their ten-count first amended complaint, filed on March 28, 1989, the Houghs alleged: intentional infliction of emotional distress (Count I); negligent infliction of emotional distress (Count II); a violation of HRS ch. 431 (Count III); violation of HRS ch. 480 (Count IV); violation of HRS ch. 386 (Count V); breach of contract (Count VI); breach of fiduciary duty (Count VII); breach of a common law duty of good faith (Count VIII); conversion (Count IX); and loss of consortium (Count X).[9] These claims were based solely on Pacific's conduct in handling Hough's attempt to obtain workers' compensation benefits and not on Hough's 1985 or 1987 back injuries. Neither Ramco nor Royal were named as defendants. Hough claimed that Pacific's conduct forced him to interrupt, forego, and/or reduce medical treatment that needlessly prolonged and/or exacerbated his injuries, all of which caused him to suffer severe emotional distress.

On August 2, 1991, the circuit court partially granted Pacific's second motion for summary judgment[10] as to Counts III, IV, V, VIII, and IX. The court ruled that "[t]he law in Hawaii does not recognize a private cause of action in plaintiffs for alleged violation of chapter 431, Chapter 386 or 480. In addition, Plaintiffs are surely not 'consumers' entitled to raise the 480-2 claim." The court also rejected Hough's bad faith claim and his argument that, by withholding the compensation funds, Pacific committed conversion. With respect to the other claims, the court ruled that a workers' compensation carrier may be sued by [a] worker for wrongful termination/delay in providing workers compensation benefits. Such a claim is not barred by HRS section 386-5, since the claim is not based upon a work injury but a failure to provide prompt and fair benefits. The employee clearly has not bargained away his right to sue his employer's carrier where the carrier and/or the employer may be responsible for wrongfully terminating or delaying benefits.

On March 9, 1992, one week before trial, Pacific brought a third motion for summary judgment on the Houghs' remaining claims, arguing that all claims were barred by the exclusive remedy provision of HRS § 386-5. On March 19, 1992, the trial court filed its order granting Pacific's motion for partial summary judgment as to the Hough's remaining claims.[11] Judgment was entered on behalf of Pacific on March 25, 1992, and the Houghs filed a timely notice of appeal on March 31, 1992.

## II. STANDARDS OF REVIEW

It is well established in this jurisdiction that:

> On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, in any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Iddings v. Mee–Lee,* 82 Hawai'i 1, 3, 919 P.2d 263, 267 (1996) (citation omitted).

"An interpretation of a statute is a question of law reviewable *de novo.*" *Cieri v.*

9. Mrs. Hough's claim is limited to Count X, loss of consortium.

10. Pacific's first motion for summary judgment, filed March 28, 1989, was denied in its entirety on April 26, 1989. The court ruled that
Plaintiffs' claims are cognizable in Circuit Court and are not barred by HRS Chapter 386, thus the complaint adequately states claims. With respect to the request for summary judgment, it is denied without prejudice to reconsideration or to the filing of future motions depending upon the facts discovered during litigation.

11. Specifically, the order stated: "IT IS HEREBY ORDERED ADJUDGED AND DECREED that Pacific Defendants' Motion for Partial Summary Judgment filed on March 9, 1992, be and hereby is granted as to all of Plaintiffs' remaining claims. There are no remaining parties, claims or issues."

*Leticia Query Realty, Inc.*, 80 Hawai'i 54, 59, 905 P.2d 29, 34 (1995) (citation omitted).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. Where the language of a statute is unambiguous, our only duty is to give effect to the statute's plain and obvious meaning. Further, in interpreting a statute, we give the words their common meaning, unless there is something in the statute requiring a different meaning.

*Iddings,* 82 Hawai'i at 6–5, 919 P.2d at 268–69 (citations omitted).

## III. *DISCUSSION*

HRS § 663–1 (1993) codifies the common law principle that all persons are responsible for their tortious conduct:

> **Torts, who may sue and for what.** Except as otherwise provided, all persons residing or being in the State shall be personally responsible in damages, for trespass or injury, whether direct or consequential, to the person or property of others, or to their spouses, children under majority, or wards, by such offending party, or the offending party's child under majority, or by the offending party's command, or by the offending party's animals, domestic or wild; and the party aggrieved may prosecute therefor in the proper courts.

Pacific claims, and the trial court apparently agreed, that a workers' compensation insurance carrier is in an "otherwise provided" situation by virtue of the provisions of HRS Chapter 386, which: (1) prescribe the exclusive remedy for an injured worker; (2) afford the same rights to an insurer as to an employer; (3) deprive the circuit court of jurisdiction; and (4) provide for penalties for an insurer's delay and failure to pay benefits. We examine Pacific's contention in light of the plain language and policies embodied in HRS Chapter 386, case law from this and other jurisdictions, and the maxim that "statutes abrogating common law rights must be strictly construed[.]" *Fonseca v. Pacific Construction,* 54 Haw. 578, 585, 513 P.2d 156,

160 (1973); *see also Burns Int'l Sec. Services v. Department of Transportation,* 66 Haw. 607, 611, 671 P.2d 446, 449 (1983) (explaining that "[w]here it does not appear there was a legislative purpose in superseding the common law, the common law will be followed").

### A. *HRS Chapter 386 Does Not Bar The Houghs From Seeking Relief In The Circuit Court Because the Houghs' Injuries Are Not "Work Injuries" Within the Meaning of the Act.*

We recently reviewed the policies behind Hawai'i's Workers' Compensation Act in *Iddings* and explained that "one of the primary purposes underlying the implementation of a workers' compensation scheme in Hawai'i was to eliminate suits based on negligence in the workplace and to spread the costs of work-related injuries over the industry." 82 Hawai'i at 6–5, 919 P.2d at 269–70.

> A compromise was thus struck in the form of a scheme of workers' compensation, wherein the employee "is automatically entitled to certain benefits whenever he or she suffers a 'personal injury by accident arising out of and in the course of employment' or an occupational disease" and "negligence and fault are largely immaterial, both in the sense that the employee's contributory negligence does not lessen his or her rights and in the sense that the employer's complete freedom from fault does not lessen his or her liability."

*Id.* (quoting 1 Larson, *The Law of Workmen's Compensation* § 1.10 at 1–1 to 1–2 (1995) [hereinafter, Larson] ) (brackets omitted). In other words,

> Work[ers'] compensation laws were enacted as a humanitarian measure, to create legal liability without relation to fault. They represent a socially enforced bargain: the employee giving up his [or her] right to recover common law damages from the employer in exchange for the certainty of a statutory award for all work-connected injuries. Since liability is made dependent on a nexus to the job, the essential prerequisite for coverage under work[ers'] compensation acts is the existence of an employer-employee relationship.

*Hun v. Center Properties,* 63 Haw. 273, 276–77, 626 P.2d 182, 185 (1981) (citations omitted).

■ This *quid pro quo*—whereby the employee is entitled to recover benefits for work-related injuries regardless of fault on the part of the employer in exchange for giving up his or her right to recover common law tort damages—is codified at HRS §§ 386–3 and –5. HRS § 386–3 provides in relevant part:

> **Injuries covered.** If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as hereinafter provided.

HRS § 386–5 provides in relevant part that:

> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury....

Pacific maintains that, as the employer's workers' compensation insurer, it enjoys statutory immunity from suit by its insureds' employees pursuant to the definition of "employer" in HRS § 386–1. HRS § 386–1 states that insurers are "entitled to [the employer's] rights and remedies under this chapter as far as applicable." Pacific contends that, therefore, HRS § 386–5 precludes tort liability of an insurer to its insured's employee. Pacific's argument requires that we determine whether an employer, and hence an insurer, would be immune from a common law action under the facts of this case.

■ As previously stated, HRS § 386–5, the exclusivity provision relied on by Pacific, provides that "the rights and remedies herein granted to an employee ... *on account of a work injury suffered by an employee* shall

exclude all other liability of the employer to the employee, ... at common law or otherwise, on account of the injury." HRS 386–5 (emphasis added). By its plain language, HRS § 386–5, and indeed, the entire workers' compensation scheme, applies only to "work injuries." *See Estate of Coates v. Pacific Engineering,* 71 Haw. 358, 362, 791 P.2d 1257, 1259–60 (1990) ("The Hawaii State Legislature, by enacting the exclusivity provision, intended that our Workers' Compensation system be the exclusive remedy for *work-related* injuries and deaths." (Emphasis added.)); Riesenfeld, *Study of the Workmen's Compensation Law in Hawaii,* Legislative Reference Bureau, Report No. 1 (1963) at iii ("Workmen's compensation then is a branch of social insurance for workers aimed at protection against the consequences of *work injuries.*" (Emphasis added.)). The dispositive issue, therefore, is whether the alleged injuries claimed by Hough are "work injuries" within the meaning of HRS Chapter 386.

HRS § 386–1 defines "work injury" as "a personal injury suffered under the conditions specified in section 386–3," that is, one "arising out of and in the course of the employment." "Employment," in turn, "means any service performed by an individual for another person under any contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully entered into." HRS § 386–1.

In *Tate v. GTE Hawaiian Telephone Co.,* 77 Hawai'i 100, 881 P.2d 1246 (1994), this court clarified the nature and scope of coverage under the Hawai'i workers' compensation law by explaining the test used to determine when an injury is a "work injury" and, thus, compensable under HRS Chapter 386.

> For an injury to be compensable under a workers' compensation statute, there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment. This court has employed two different ap-

proaches in determining whether injuries meet this criterion.

. . . .

More recently, the court has adopted a "unitary" test that considers whether there is a sufficient work connection to bring the accident within the scope of the statute. First articulated in *Royal State National Insurance Co. v. Labor and Industrial Relations Appeal Board*, 53 Haw. 32, 487 P.2d 278 (1971), the work connection approach simply requires the finding of a causal connection between the injury and any incidents of employment. *Chung [v. Animal Clinic]*, 63 Haw. [642,] 648, 636 P.2d [721,] 725 [ (1981) ] (citations omitted). The unitary work connection test was formally adopted as the correct means of interpreting and applying HRS Sec. 386-3 in *Chung. Id.* at 649, 636 P.2d at 726. *Tate*, 77 Hawai'i at 103, 881 P.2d at 1249 (footnotes omitted). The *Tate* court went on to explain that "[a]n injury is said to arise in the course of the employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while he or she is fulfilling his or her duties or engaged in doing something incidental thereto." *Id.* at 103-04, 881 P.2d at 1249-50 (quoting Larson, *supra*, § 14.00) (internal quotation marks and brackets omitted). *Accord Smith v. State Dept. of Labor and Indus. Rels.*, 80 Hawai'i 150, 154, 907 P.2d 101, 105, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995).

The relevant statutory language and our prior interpretations of that language do not reasonably envision emotional and physical suffering allegedly caused by an insurer's—and in this case, Pacific's—"outrageous and intentional denial of medical benefits and disability payments" as an injury "arising out of and in the course of employment." The alleged injuries occurred during Hough's attempt, as a claimant, to garner workers' compensation benefits. Hough sought these benefits on his own behalf, not as "a service performed by an individual for another person," HRS § 386-1, or while he was "fulfilling his ... [employment] duties or engaged in doing something incidental thereto." *Tate*, 77 Hawai'i at 104, 881 P.2d at 1250.

The scope and course of Hough's employment as a construction worker did not involve obtaining workers' compensation benefits. Moreover, the alleged injuries occurred *after* Hough's employment was terminated due to his total disability.

Hough alleges that intentional acts on the part of Pacific and its agents caused him harm, separate and distinct from the work injury suffered by Hough. The torts alleged by Hough were not directed against him because of his employment but because of his attempt to obtain workers' compensation benefits. The fact that Hough came into contact with Pacific as a result of seeking workers' compensation benefits does not make the injuries suffered as a result of Pacific's conduct "work injuries" within the meaning of HRS Chapter 386. The factual and legal events that caused Pacific's agents to have contact with Hough are irrelevant to whether they committed torts, unrelated to the original work injury, after those contacts were made.

We therefore hold that the injuries alleged by Hough in the first amended complaint are not "work injuries" within the scope of HRS Chapter 386. Consequently, Hough is not precluded by the exclusivity provision of HRS § 386-5 from seeking common law tort remedies against Pacific.

■ Pacific also argues that HRS § 386-73 deprives the circuit court of jurisdiction. HRS § 386-73 provides in relevant part that "[u]nless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter." In Count V of the first amended complaint, Hough alleges violations of HRS Chapter 386 itself. Clearly, Count V raises a "controvers[y] or dispute[ ] under this chapter," over which "the director of labor and industrial relations shall have original jurisdiction[.]" HRS § 386-73. We therefore hold that summary judgment was properly granted with respect to Count V because the circuit court was without jurisdiction over the claim.

■ We reject Pacific's argument, however, with respect to Hough's common law tort

claims. In those claims, Hough alleges injuries caused by Pacific's tortious conduct *outside* the course and scope of his employment. Because Hough's common law tort claims do not "arise under" HRS Chapter 386, the director of labor and industrial relations does not have original jurisdiction under HRS § 386–73.

Our reasoning is supported by decisions of other courts that have considered the same issue under similar workers' compensation statutes. For example, in *Hayes v. Aetna Fire Underwriters,* 187 Mont. 148, 609 P.2d 257 (1980), the Montana Supreme Court considered, as an issue of first impression, whether a complaint alleging that a workers' compensation insurer and its adjuster committed intentional torts upon a claimant is within the exclusive jurisdiction of the Workers' Compensation Court. Reviewing the law of other jurisdictions, the court explained that

> [t]he right [to bring a tort action against the insurer for independent intentional torts] has been upheld on several different grounds. First, and most frequently, the courts have upheld the right to bring an action for independent intentional torts because the tortious conduct, which gives rise to the action, does not arise out of the original employment relationship. It occurs after employment and arises out of the employee's relationship with the insurance carrier after the employment relationship has been terminated. It is predicated on an act after the injury and during the settlement of the claim. The insurance carrier is no longer the "alter ego" of the employer, but rather is involved in an independent relationship to the employee when committing such tortious acts. *Gibson [v. National Ben Franklin Ins. Co.],* 387 A.2d [220,] 222–223 [ (Me.1978) ]; *Reed [v. Hartford Accident & Indem. Co.],* 367 F.Supp. [134,] 135 [ (E.D.Pa.1973) ]; *Martin [v. Travelers Ins. Co.],* 497 F.2d [329,] 330–331 [ (1st Cir.1974) ]; *Stafford [v. Westchester Fire Ins. Co. of N.Y., Inc.],* 526 P.2d [37,] 43 [ (Alaska 1974) ]; *Unruh [v. Truck Ins. Exchange],* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d [1063,] 1073

[ (1972) ]; *Coleman [v. American Universal Ins. Co.],* 86 Wis.2d 615, 273 N.W.2d [220,] 223 [ (1979) ]. Perhaps the best statement of the concept is found in *Coleman,* which stated:

> The injury for which remedy is sought in the instant case is the emotional distress and other harm caused by the defendants' intentional acts during the investigation and during the course of payment of the claim. This claimed injury was distinct in time and place from the original on-the-job physical injury which was subject to the Compensation Act. The injury for which recovery is sought in the present actions did not occur while the plaintiff was employed or while he was performing services growing out of and incidental to his employment. As the plaintiff repeatedly and correctly stresses in his brief, this action is based not on the original work-related injury but on a second and separate injury resulting from the intentional acts of the insurer and its agents while investigating and paying the claim. The Act does not cover the alleged injury, and the exclusivity provision[ ] does not bar the claim. 273 N.W.2d at 223.

*Hayes,* 609 P.2d at 261–62. *See also Zurich Am. Ins. Co. v. Dicks,* 220 Ga.App. 725, 470 S.E.2d 279 (1996) (holding that plaintiff's claim of physical injury caused by insurer's tortious delay in making payments was outside scope of Workers' Compensation Act and therefore not barred by exclusivity provision); *Tallman v. Hanssen,* 427 N.W.2d 868 (Iowa 1988) (exclusivity provisions of workers' compensation act did not bar tort action that alleged intentional infliction of mental anguish by refusing to pay medical bills, inasmuch as bad faith claim was outside scope of exclusivity); *Kaluza v. Home Ins. Co.,* 403 N.W.2d 230, 236 (Minn.1987) ("Tort claims against an employer or its insurer are not barred by exclusivity provisions if the injuries claimed or the damages sought did not arise out of and in the course of employment."); *Seale v. American Motorist Ins. Co.,* 798 S.W.2d 382, 391 (Tex.Ct.App.1990);[12] 2A Larson, *supra,* § 68.34(b) at 13–196

---

**12.** The *Seale* Court held that:

We reject the contention that the exclusivity

("Plainly the existence of a compensation claim does not give insurers or employers a blanket exemption from the law of tort."); *Annotation: Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due,* 8 A.L.R.4th 902 (1981 and Supp.1996) and cases cited therein. *And see Fonseca,* 54 Haw. at 585, 513 P.2d at 160 (stating that "[t]here is no evidence that the legislature ever intended to make workmen's compensation benefits representative of full monetary recovery in the absence of essential prerequisites for coverage.").

▮ Pacific also argues, albeit halfheartedly, that Hough's claims are barred by HRS §§ 386–31(b) and –92,[13] which authorize specific penalties for an insurer's delay or failure to pay benefits. We discern no indication, however, that the administrative penalties authorized by HRS §§ 386–31(b) and –92 were intended by the legislature to abrogate common law rights to bring an action in tort.

We are persuaded by the reasoning of the Texas Supreme Court in *Aranda v. Insurance Company of North America,* 748 S.W.2d 210 (Tex.1988), wherein the court stated:

> Of the penalty provisions cited by the carriers, however, only two provide direct benefits to claimants. Under [the first provision], a carrier is subject to a 15% penalty if the carrier fails to pay benefits or file a notice of controversion within twenty days of receiving notice of the claim. Under [the second provision], a 12% penalty and attorney's fees may be imposed as a sanction against a carrier who fails to pay promptly the proceeds of a settlement, IAB award, or agreed judgment. Neither provision affords relief to

the claimant when a carrier breaches the duty of good faith and fair dealing by refusing to pay benefits for a compensable claim until ordered to do so by the Industrial Accident Board. Even if these provisions addressed such misconduct, the Act does not contemplate that the failure of a carrier to act in good faith or the carrier's intentional tort can be meaningfully redressed by the mere addition of 12% or 15% to the past due compensation. Such nominal penalties are of questionable value as an incentive for the carrier to act reasonably in processing an employee's claim.

*Id.* at 214–15 (citations omitted). Similarly, of the penalty provisions cited by Pacific, only HRS § 386–92 provides for penalties payable directly to the claimant and only, until its amendment by the 1995 legislature, in the amount of ten percent of the compensation.[14] Although we recognize that a number of other courts have taken a contrary position regarding the significance of administrative penalties, "we are not persuaded by the contrary view because[,] although administrative fines may have some deterrent effect …, they do not purport to address the plight of the injured worker who may suffer great deprivation as a result of the tortious denial or delay of his or her benefits." *Falline v. GNLV Corp.,* 107 Nev. 1004, 823 P.2d 888, 894 (1991).

The placement of the penalty provision in Part III of the Act, entitled "Administration," suggests a legislative intent to provide "teeth" to the DLIR's administration of the Act rather than to create an exclusive remedy for tortious conduct on the part of the insurer. Moreover, the arbitrary amount of the penalty, ten percent of the compensation owed, does not bear any particularized rela-

provisions of the Workers' Compensation Act provide the exclusive remedies for the injured worker and thereby preclude any cause of action against a carrier for bad faith or intentional misconduct in the processing of compensation claims, either for benefits or medical aid or hospital services. The compensation act spells out a compensation scheme and schedule for personal injuries sustained by an employee in the course of his employment…. It is clear then that the Act provides that the remedies set forth by the statute are exclusive only if the personal injury complained of is an injury contemplated by the Act; that is, a personal injury sustained in the course and scope

of employment. Hence, the Act was not intended by the legislature to shield carriers from the entire field of tort law. Therefore, liability resulting from a carrier's breach of the duty of good faith and the duty of fair dealing from intentional misconduct in the processing of a compensation claim is different and separate from the liability for the actual accidental personal injury arising on the job.

*Seale,* 798 S.W.2d at 391.

13. *See supra* notes 6 and 7.

14. *See supra* note 7.

tionship to the injury suffered as a result of the insurer's acts. We will not presume, in the absence of any indication in the language of the statute or its legislative history, that the legislature intended administrative fines to be the exclusive remedy for workers injured by a workers' compensation insurer's tortious delay or failure to pay benefits. We agree with the court in *Falline* that, "[i]f the Legislature sees fit to declare the statutory scheme of fines an exclusive remedy to aggrieved work[ers] whose claims are denied or delayed as a result of negligence or bad faith, the Legislature may enact legislation to that end." *Falline*, 823 P.2d at 893.

■ Because we determine that: (1) the exclusive remedy provisions of HRS § 386–5 do not bar judicial remedies for non-work injuries; (2) HRS § 386–73 does not deprive the circuit court of subject matter jurisdiction over common law tort claims not based on the original work injury; and (3) the administrative penalties authorized by HRS §§ 386–31(b) and –92 were not intended to provide an injured workers' exclusive remedy for injuries resulting from an insurer's tortious delay or termination of benefits, we hold that an employee seeking workers' compensation benefits is not precluded by these statutory provisions from pursuing a judicial remedy for torts allegedly perpetrated by his or her employer's workers' compensation insurance carrier subsequent and unrelated to the work injury. Accordingly, we vacate the circuit court's grant of summary judgment in favor of Pacific and against the Houghs on these bases.

B. *Hough May Bring an Action Based Upon Breach of Contract and Bad Faith, But Summary Judgment Was Properly Granted With Respect to Count VI Alleging Breach of Fiduciary Duty.*

■ In addition to the torts of intentional and negligent infliction of emotional distress, conversion, and loss of consortium, Hough alleges, in Count VIII of the first amended complaint, that Pacific violated a duty of "good faith" owed to him. Subsequent to the motions court's grant of summary judgment to Pacific on Count VIII and the briefing on this appeal, this court, in *Best Place, Inc. v. Penn America Insurance Co.,* 82 Hawai'i 120, 920 P.2d 334 (1996), recognized a cause of action based on violation of the duty of good faith in insurance contracts. We held "that there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action." *Best Place,* 82 Hawai'i at 132, 920 P.2d at 346.

■ Although our rulings in *Best Place* were directed toward the rights of the insured and not those of claimants, an employee is not merely a potential claimant in relation to his or her employer's workers' compensation insurance contract. An employee is an intended third-party beneficiary [15] of an employer's contract with an insurance company for workers' compensation coverage.

The Workers' Compensation Act sets forth a compensation scheme that is based on a three-party agreement entered into by the employer, the employee, and the compensation carrier.... As between the compensation carrier and the employee, there is a promise for a promise: the carrier agrees to compensate the employee for injuries sustained in the course of employment, and the employee agrees to relinquish his common law rights against his employer. The employee is thus a party to the contract and therefore entitled to recover in that capacity.

---

**15.** An "intended beneficiary" is defined in *Restatement (Second) of Contracts,* § 302 (1981) as follows:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Aranda,* 748 S.W.2d at 212 (citations omitted.); *Franks v. United States Fidelity and Guar. Co.,* 149 Ariz. 291, 718 P.2d 193, 197 (Ct.App.1985) ("A claim by an injured employee against the workers' compensation carrier is a first-party claim."). *See also Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 128 n. 12, 883 P.2d 38, 49 n. 12 (recognizing non-contracting parties' rights as third party beneficiaries of an insurance contract), *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66 (1994); *Hunt v. First Ins. Co. of Hawai'i, Ltd.,* 82 Hawai'i 363, 367, 922 P.2d 976, 980 (App.1996) (same), *cert. dismissed,* 83 Hawai'i 204, 925 P.2d 374 (1996).

██ Pacific, therefore, owed contractual duties, express and implied, to Hough, as an intended beneficiary of his employers' workers' compensation insurance contract. Accordingly, we hold that Hough may enforce these duties, *see Restatement (Second) of Contracts* § 304 (1981), including the duty to handle and pay claims in good faith. Under the rationale articulated in *Best Place,* a breach of the implied contractual duty of good faith gives rise to the independent tort cause of action for a third-party beneficiary, under the same standards and with the same limitations for punitive damages as discussed in *Best Place,* 82 Hawai'i at 132–34, 920 P.2d at 346–48.

Consequently, summary judgment in favor of Pacific on Counts VI (breach of contract) and VIII ("bad faith") was improperly granted. Although we vacate the circuit court's order granting summary judgment in favor of Pacific on Counts VI and VIII and remand for a determination of the merits of those claims, we also reiterate our cautions concerning the "bad faith" claim in the context of an insurance contract:

> [C]onduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in "bad faith." *California Shoppers Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985) (bad

faith implies unfair dealing rather than mistaken judgment).

*Id.* at 133, 920 P.2d at 347 (most citations omitted).

██ In Count VI of the first amended complaint, Hough alleges a claim for damages based on breach of a fiduciary duty owed to him by Pacific. In *Best Place,* we recognized that no fiduciary relationship existed between an insurer and an insured in a first-party context. The absence of a fiduciary relationship, however, did not affect our conclusion that an insured could sue for bad faith in a first-party claim. On the other hand, it is tautological that the absence of a fiduciary relationship would preclude a claim based upon such a relationship. A employee who sues an insurer, based on the insurer's failure to pay benefits under the employer's workers' compensation insurance contract, is in a similar position to the employer. Both are in more of an adversarial than a trust relationship. Consequently, no fiduciary relationship exists between the employee and the insurer in such a situation. Accordingly, we hold that the circuit court did not err in granting summary judgment with regard to Count VI of the first amended complaint. *See Best Place,* 82 Hawai'i at 129, 920 P.2d at 343.

C. *Hough May Not Assert A Claim For Damages For Pacific's Alleged Violation Of HRS Chapter 431.*

██ In Count III of the complaint, Hough claims that Pacific's conduct amounted to a violation of HRS Chapter 431, entitled "Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance," and that, as a result of the violation, Hough suffered severe mental and emotional distress. The Intermediate Court of Appeals' (ICA) recent holding in *Hunt* is dispositive of this issue on appeal.

In *Hunt,* the ICA concluded that "[n]othing in the plain language of [HRS Chapter 431,] Article 13 expressly provides for a private cause of action for persons injured by insurance companies who violate this article" and that "[a] review of the relevant legislative history of Article 13 fails to indicate a

legislative intent to either create or deny a private cause of action." 82 Hawai'i at 371, 922 P.2d 976. Because no appellate court in this jurisdiction had previously decided whether there is a private cause of action for violation of HRS Chapter 431, the ICA looked to other jurisdictions whose unfair claims practices acts, like Hawai'i's, were modeled after the National Association of Insurance Commissioners' (NAIC) Model Unfair Claims Practices Act.

> The great majority of these state versions of the Model Act have been held not to create a private cause of action. In addition, the 1980 Report of the NAIC has stated explicitly that the Model Act " 'does not contain an individual right of action provision[.]' " Moreover, HRS § 431:13–202(b) provides: "No order of the commissioner . . . shall in any way relieve or absolve any person affected by the order from any *other* liability, penalty, or forfeiture required by law." (Emphasis added). Other jurisdictions with a similar statutory provision have found that the term "other" supports denying a private cause of action because the term indicates that liability against insurer [sic] must be found outside of the statute.

*Id.* at 372, 922 P.2d at 985 (citations and footnote omitted) (ellipses in original). Accordingly, the ICA held that "no private cause of action exists under HRS Chapter 431, Article 13." *Id. See also Best Place,* 82 Hawai'i at 126, 920 P.2d at 340 (stating that "Article 13 of the Hawai'i Insurance Code does not authorize a private cause of action pursuant to its administrative remedies." (Citation omitted.)) Therefore, we hold that summary judgment was properly granted in favor of Pacific on Count III of the first amended complaint.

D. *Hough May Not Assert A Claim For Damages For Pacific's Alleged Violation of HRS Ch. 480.*

 Although Hough contends, on appeal, that the circuit court erred in granting summary judgment with respect to Count IV, alleging that Pacific violated provisions of HRS Chapter 480, he does not present arguments in his briefs to support such a position.

Chapter 480 specifies that acts or practices that comprise unfair or deceptive practices constitute violations. HRS § 480–2 provides in relevant part:

> **Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
>
> . . . .
>
> (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

Accordingly, Hough may only bring an action under this chapter if he is a "consumer" within the meaning of the statute. HRS § 480–1 defines "consumer" as follows:

> "Consumer" means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.

*See also Cieri,* 80 Hawai'i at 67–69, 905 P.2d at 42–44 (explaining purpose of restricting standing to "consumers," and holding that purchasers of residence were "consumers" because they committed money in a "personal investment"). Hough is not a consumer within the meaning of this statute. He did not purchase workers' compensation insurance from Pacific. He is a third party beneficiary of the contracts of insurance purchased by his employers.

 Although the ICA, in *Hunt,* did not address the argument raised by Hunt that, as a third-party beneficiary to a contract of insurance, she had standing to assert all contractual rights available to the named insured and, therefore, had standing to maintain a private cause of action under HRS §§ 480–2 and –13, it held that, notwithstanding her third-party status, the named insured was also not a "consumer" because it was not a natural person. 82 Hawai'i at 373, 922 P.2d at 986. The same situation obtains in the instant case. As previously stated, Hough is not a consumer and therefore lacks standing to maintain a private cause of action pursu-

ant to HRS § 480–13. Nor can he maintain an action based on his third-party beneficiary status, because neither Royal nor Ramco is a "consumer" as defined by HRS § 480–1. We therefore hold that Hough has no standing to bring an action based on an alleged violation of HRS § 480–2. Accordingly, the circuit court did not err in granting summary judgment with respect to Count IV.

### IV. *CONCLUSION*

For the foregoing reasons, we vacate the March 25, 1992 judgment in favor of Pacific as to Counts I, II, VI, VIII, IX, and X and remand for adjudication on the merits of those claims. The judgment in favor of Pacific as to Counts III, IV, V, and VII is affirmed.