Donna L. DALESANDRO, Plaintiff,

v.

**LONGS DRUG STORES CALIFORNIA, INC., a California corporation, Defendant.**

**No. 05–00192 DAE–KSC.**

United States District Court, D. Hawai'i.

Aug. 10, 2005.

Charles S. Lotsof, Century Square, Honolulu, HI, for Donna L. Dalesandro, plaintiff.

Shelton G.W. Jim On, Henry F. Beerman, Jim On & Beerman, Honolulu, HI, for Longs Drug Stores California Inc., a California corporation, defendant.

*ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CLAIM OF UNFAIR AND DECEPTIVE ACT IN TRADE OR COMMERCE*

DAVID ALAN EZRA, Chief Judge.

The Court heard Defendant's Motion on August 1, 2005. Charles S. Lotsof, Esq., appeared at the hearing on behalf of Plaintiff; Henry F. Beerman, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendant's Motion for Partial Summary Judgment on the Claim of Un-

fair and Deceptive Act in Trade or Commerce.

## BACKGROUND

On March 17, 2005, Plaintiff Donna L. Dalesandro filed the instant negligence and breach of warranty lawsuit against Defendant Longs Drug Stores California ("Longs"), seeking damages for personal injuries she alleges she received when Defendant's pharmacy erroneously instructed her as to the prescribed dosage of a prescription she filled there. Plaintiff states that her physician prescribed Epivir at a dosage of 25 mg per day, which would equal 1/2 teaspoon of the medication daily. However, when Longs' pharmacy filled the prescription on March 27, 2004, it was labeled as follows: "TAKE 2 & 1/2 TEASPOONS (25MG) ORALLY EVERY DAY." By indicating that she should consume 2½ teaspoons per day, Defendant erroneously instructed her to consume five times the prescribed amount daily, Plaintiff contends. Longs' pharmacy repeatedly refilled the prescription between March 27 and October 4, 2004, Plaintiff states, each time repeating the error. Plaintiff asserts that this error caused her bodily injury and distress, including the rejection of a transplanted pancreas she received in 2003, and damage to a transplanted kidney she received in 1999.

Additionally, Plaintiff asserts a separate claim for unfair and deceptive act in trade or commerce in violation of Hawaii Revised Statute § 480–2. The dispute giving rise to this claim occurred after the alleged injury, when Plaintiff alleges that Defendant failed to comply with their agreement regarding the release of Plaintiff's medical records. On November 9, 2004, counsel for Plaintiff, Charles Lotsof, mailed a letter to Defendant detailing Plaintiff's allegations and injuries, and requesting that Defendant inform him of "whether and to what extent your firm wishes to compensate Ms. Dalesandro for the harm." (Def. Concise Statement in Supp., Ex. 1 at 3.) On November 29, Linda Howard, an attorney in Longs' law department, responded that she would need to have the opportunity to review Plaintiff's medical records. (Def. Concise Statement in Supp., Ex. 2.) To this end, Ms. Howard attached authorization forms to the response and asked Plaintiff to sign and return them. (Def. Concise Statement in Supp., Ex. 2.)

On December 17, Mr. Lotsof responded by returning the signed authorization forms, with some modifications; additionally, he wrote in a letter that "your obtaining information directly from the providers is strictly conditioned on your providing me with complete copies of all records you do obtain, as soon as you have received them." (Def. Concise Statement in Supp., Ex. 3.) On January 3, 2005, Ms. Howard wrote to Mr. Lotsof and informed him that Longs "do[es] not have sufficient resources to make voluminous copies for other counsel," and therefore she would request that the medical providers send copies of the records directly to both Plaintiff and Defendant. (Def. Concise Statement in Supp., Ex. 4.) The next day, she mailed letters to the providers requesting copies of the records for both Plaintiff and Defendant. (Def. Concise Statement in Supp., Ex. 5–9.)

Mr. Lotsof responded on January 26 by again requesting copies of the documents from Longs. (Def. Concise Statement in Supp., Ex. 10.) On February 15, 2005, he wrote Ms. Howard stating that he had received no response to his January 26 letter. In the February 15 letter, Mr. Lotsof asserted that although he had received copies from at least some of the providers at this point, "this is not the procedure that I had agreed to and I have not received the other providers' records. I don't know exactly what you have got-

ten." (Def. Concise Statement in Supp., Ex. 11.)

On March 15, 2005, Plaintiff filed the instant complaint, alleging, among other things, breach of Hawaii Revised Statute § 480–2, which prohibits unfair and deceptive acts in trade and commerce.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 323, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or it is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

### DISCUSSION

■ Section 480–2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful," and establishes a private cause of action allowing individuals to sue based on violations of the statute. Haw.Rev.Stat. § 480–

2(a)–(b). The Court finds that allegedly offending practices do not qualify as "in the conduct of any trade or commerce," although this issue need not be addressed, because as will be explained below, Plaintiff is not a "consumer" in the context of the instant dispute and therefore does not have standing under Chapter 480 to assert this claim.

In 1987, the Hawaii legislature amended Section 480–2 with the intent to expressly limit standing under that section to consumers. Haw.Rev.Stat. § 480–2(d); *see also Dash v. Wayne,* 700 F.Supp. 1056, 1058–1059 (D.Haw.1988). Section 480–1 defines the term consumer to mean "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Haw.Rev.Stat. § 480–1. Both Plaintiff and Defendant devote a great deal of argument to the manner in which the courts of other states have construed their own similar statutes. However, the Court finds, that because the language of the statute is sufficiently unambiguous and the Hawaii courts have provided ample explication, there is no need to analogize using this non-binding authority.

As may be expected, due to the plain meaning of the statute's language, the Hawaii courts have repeatedly held that an individual is not a consumer, and therefore has no standing to sue under Section 480–2, when that person has not either: (1) purchased, attempted to purchase, or been solicited to purchase goods or services from the defendant, or (2) committed money, property, or services in a personal investment. *See, e.g., Hough v. Pacific Ins. Co.,* 83 Hawai'i 457, 927 P.2d 858, 871–872 (1996); *Hunt v. First Ins. Co. of Hawaii, Ltd.,* 82 Hawai'i 363, 922 P.2d 976, 986 (1996). The courts have referred to

the statute as "plain and unambiguous," and have therefore declined to construe its language more broadly than would be obvious. *See, e.g., Hunt,* 922 P.2d at 986. Indeed, in construing this section, the Hawaii Supreme Court explained:

> It is well settled that, when construing a statute, this court's "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." Moreover, "[w]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning."

*Cieri v. Leticia Query Realty, Inc.,* 80 Hawai'i 54, 905 P.2d 29, 42 (1995) (internal citations omitted).

In an attempt to fit the instant dispute into the language of the statute, Plaintiff asserts that "photocopies" are the goods in question, "since they are fairly identified as moveables before the contract is performed." (Pl. Opp'n at 10.) In reaching this conclusion, Plaintiff cites the definition provided in Merriam Webster's Dictionary, which states that "goods" are "personal property having intrinsic value, but usually excluding money, securities, and negotiable instruments." (Pl. Opp'n at 10.)

However, when interpreting Section 480–1, the Hawaii Supreme Court has turned to the definition of "goods" provided by section 2–105 of the Uniform Commercial Code, which has been codified in Haw.Rev.Stat. § 490:2–105. That section provides:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, (Article 8) and things in action. "Goods" also includes the unborn young of animals and grow-

ing crops and other identified things attached to realty as described in the section on goods to be severed from realty. Haw.Rev.Stat. § 490:2–105(1) (1985); *see Cieri v. Leticia Query Realty, Inc.*, 80 Hawaiʻi 54, 905 P.2d 29, 41 (1995) (holding that real estate or residences do not qualify as "goods" under Section 480–1, and home buyers therefore do not have standing as "consumers" to bring a claim alleging a violation of Chapter 480 as purchasers of "goods").

Preliminarily, the Court does not find that the parties entered into a contract of sale, the existence of which is presupposed by the statutory definition of "goods." However, even if medical records could theoretically be deemed "goods" with the statute's broad definition, this is not dispositive, because Plaintiff is not a purchaser or attempted purchaser of the medical records, nor was she solicited to purchase the medical records. Plaintiff does not assert that she has standing as one who committed money, property, or services in a personal investment. Therefore, she only has standing as a consumer under the statute's definition if she purchased, attempted to purchase, or was solicited to purchase goods or services from Defendant. *See, e.g., Hough*, 927 P.2d at 871–872; *Hunt*, 922 P.2d at 986.

Plaintiff counters that the Hawaii Supreme Court has specifically held that an individual need not actually make a purchase from a defendant in order to have standing as a consumer under the statute. (Pl. Opp'n at 8–9.) Plaintiff cites *Zanakis–Pico v. Cutter Dodge, Inc.* for the proposition that "[p]ursuant to HRS Chapter 480, consumers who do not actually purchase goods or services may recover statutorily prescribed damages." 98 Hawaiʻi 309, 47 P.3d 1222, 1228–1232 (2002). Plaintiff is absolutely correct that no actual purchase is required to confer consumer standing under the act; however, this

point of law does not advance Plaintiff's argument. The statute nonetheless requires that, if a plaintiff has not made a purchase, the plaintiff must have attempted to or have been solicited to make a purchase. The Hawaii Supreme Court's ruling in *Zanakis–Pico* only reinforces this point. 47 P.3d at 1229 ("Thus, the plain language of the statute reflects that the legislature intended not only to protect persons who actually purchased goods or services as a result of unfair or deceptive acts and practices, but also those who attempted or were solicited to do so.").

No matter how broadly this Court defines the term "purchase," there is not one to be found in this interaction. Section 480–1 defines "purchase" simply as "includ[ing] 'contract to buy,' 'lease,' 'contract to lease,' 'acquire a license,' and 'contract to acquire a license.'" Haw.Rev. Stat. § 480–1. Pursuant to the doctrine of *noscitur a sociis*, "a word is known by the company it keeps," meaning that "words are to be judged by their context and that words in a series are to be understood by neighboring words in the series." *United States v. King*, 244 F.3d 736, 740–741 (9th Cir.2001); *see also State v. Merino*, 81 Hawaiʻi 198, 915 P.2d 672, 691 (1996) ("[T]he canon of construction denominated *noscitur a sociis* ... may be freely translated as 'words of a feather flock together,' that is, the meaning of a word is to be judged by the company it keeps."). Indeed, "[i]t is well established that 'words grouped in a list should be given related meaning.'" *Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non–Bargaining Retirement Plan*, 72 F.3d 686, 689 (9th Cir.1995) (citing *Massachusetts v. Morash*, 490 U.S. 107, 114–15, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)). With this in mind, no stretch of the imagination would allow this Court to conclude that the negotiations for the pro-

duction of records for use in settlement proceedings would result in something sufficiently similar to a contract of sale or lease that they would constitute a "purchase," attempted purchase, or solicitation to purchase under the statute. Calling a pig a cow does not change pork to beef. There was simply no "purchase" here.

Therefore, because Plaintiff does not assert that she "committed money, property, or services in a personal investment," and the Court finds that no purchase, attempted purchase, or solicitation to purchase goods occurred, the Court finds no need to consider the parties arguments regarding whether the claimed transaction was "primarily for personal, family, or household purposes." As regards to the facts underlying her Section 480–2 claim, Plaintiff is not a consumer as defined in the statute, and therefore has no standing to bring a cause of action under Chapter 480.

■ However, the Court further finds that, in the context of the facts giving rise to the Section 480–2 claim, Defendant Longs was not engaged in "trade or commerce" within the meaning of the statute. Section 480–2 prohibits "unfair or deceptive acts or practices *in the conduct of any trade or commerce.*" Haw.Rev.Stat. § 480–2 (emphasis added). When in *Cieri v. Leticia Query Realty, Inc.* the Hawaii Supreme Court first addressed the independent meaning of the phrase "trade or commerce" as used in Section 480–2, the court found persuasive a line of cases from the Massachusetts Appeals Court an identical Massachusetts statute that, like Section 480–2, was based on the federal antitrust statutes. 905 P.2d at 37–40. The Hawaii Supreme Court noted that the Supreme Judicial Court of Massachusetts court interpreted "trade or commerce" to mean that the statute only applied to acts or practices perpetrated in a "business context." *Id.* at 38 (citing *Lantner v. Carson,* 374 Mass. 606, 611, 373 N.E.2d 973

(1978)). The court also cited with approval the following factors established by the Massachusetts court for determining whether a transaction took place in a business context: "(1) the nature of the transaction; (2) the character of the parties involved; (3) the activities engaged in by the parties; (4) whether similar transactions had been undertaken in the past; (5) whether the transaction was motivated by business or for personal reasons (as in the sale of a home); and (6) whether the participant played an active part in the transaction." *Id.* (citing *Begelfer v. Najarian,* 381 Mass. 177, 190–91, 409 N.E.2d 167 (1980)). The Hawaii Supreme Court explained:

> As did the [the Massachusetts courts], we similarly interpret HRS § 480–2 to require that, in order to fall within the purview of HRS chapter 480, a claim for alleged unfair and deceptive acts or practices against [a defendant] must stem from a transaction involving "conduct in any trade or commerce," similar to the Massachusetts courts' definition of the concept of "business context." The question whether a transaction occurs within a "business context," thus implicating the applicability of HRS chapter 480 to an individual [defendant], must be determined on a case-by-case basis by an analysis of the transaction.

*Cieri,* 905 P.2d at 40.

In examining the nature of the interaction at the heart of the instant dispute, the Court finds that it occurred purely in the context of settlement and preparation for litigation, which is distinct from a "business context." The activity the parties were engaged in—negotiating the production of documents for settlement purposes prior to the inception of litigation—occurred in preparation for litigation, not in trade or commerce. The parties had not engaged in similar transactions in the past,

and the transaction was motivated solely by Plaintiff's personal injury suit, not by business concerns. *See also Beerman v. Toro Mfg. Corp.,* 1 Haw.App. 111, 615 P.2d 749, 754 (1980) ("The legislative history to §§ 480–2 and 480–13 makes clear that the paramount purpose of both statutes is to prevent deceptive practices by businesses that are injurious to other businesses and consumers. It does not reflect a legislative intent that [the statutes] be used as a vehicle for personal injury suits.").

Likewise, the character of the parties involved does not support a finding that Defendant was engaged in trade or commerce. The Hawaii Supreme Court's analysis in *Cieri* made clear that, in conducting case-by-case analysis of whether a particular transaction should fall within the purview of Section 480–2, courts should remember the legislature's purpose of protecting consumers and consider whether one party has a considerable advantage over another that would leave the disadvantaged party in a position analogous to that of the typical consumer. 905 P.2d at 40 ("[A] party who engages a broker or salesperson to represent him or her in a real estate transaction has a considerable advantage over a party who is not so represented. Accordingly, in the context of the [defendants], in particular, and real estate brokers and salespersons, in general, we believe that real estate brokers and salespersons, unlike individual sellers, are *generally* subject to liability under HRS chapter 480.") (emphasis in original). While in the context of the underlying negligence lawsuit the relationship between Plaintiff and Defendant may be characterized as that of consumer and retailer, as regards to the pre-litigation settlement negotiations the two were equal parties represented by counsel and preparing to face each other as adversaries on the level playing field established by our justice system.

Thus, the Court finds that, not only does Plaintiff lack standing as a consumer to bring a claim under Section 480–2, but Defendant's actions would not fall under the act's prohibitions, because they were not occurring "in the conduct of any trade or commerce."

### CONCLUSION

For the reasons stated above, the GRANTS Defendant's Motion for Partial Summary Judgment on the Claim of Unfair and Deceptive Act in Trade or Commerce.

IT IS SO ORDERED.